**ESSO STANDARD OIL CO. v. UNITED STATES et al.**

**NATIONAL BULK CARRIERS, Inc. v. The GEORGE W. BARNES et al.**

**The PAN VIRGINIA.**

**No. 207, Docket 21268.**

United States Court of Appeals Second Circuit.

April 18, 1949.

---

Barry, Wainwright, Thacher & Symmers, of New York City (John C. Crawley and Joseph M. Brush, both of New York City, of counsel), for appellant, National Bulk Carriers, Inc.

Kirlin, Campbell, Hickox & Keating, of New York City (Ira A. Campbell and Raymond T. Greene, both of New York City, of counsel), for appellee, Esso Standard Oil Co.

John F. X. McGohey, U. S. Atty., of New York City (Hunt, Hill & Betts, George Whitefield Betts, Jr. and Helen Tuohy, all of New York City, of counsel), for appellee United States.

Before AUGUSTUS N. HAND, CHASE and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The libellant, owner of the S.S. George W. Barnes, brought this suit against the United States, owner of the George W.

184

Liveley, and National Bulk Carriers, Inc., owner of S.S. Pan Virginia, to recover damages to the Barnes in a collision off Cape Hatteras on November 4, 1943, between the Barnes and the Pan Virginia. Libellant's claim is based upon the alleged negligent navigation of the colliding vessel Pan Virginia and also the negligence of the Liveley because the latter without adequate reason disobeyed orders and suddenly proceeded on a course that impeded the navigation of the Barnes, so that that vessel could not avoid colliding with the Pan Virginia. The trial judge held the Barnes free from fault and the Pan Virginia and Liveley liable to the libellant for damages to the Barnes. The liability of the Pan Virginia is not questioned but it is argued that the Barnes was also guilty of faulty navigation which contributed to the accident, and that the Liveley committed no fault whatever.

The Barnes, Liveley, Commodore vessel and two other ships made up the first line of a northbound convoy, in which the Barnes was to the extreme port, the Liveley next, the Commodore vessel next, and the two other ships to her starboard. A naval escort vessel warned the Commodore ship that a southbound convoy was approaching, and the Commodore vessel signalled her convoy for an emergency turn of 45° to the right. This signal was immediately repeated by the Liveley and in turn by the Barnes. After the execution signal, the Barnes started to proceed in a direction 45° to the right of her former course. Shortly after she had commenced swinging to the right, she noticed that the Liveley did not swing right in unison with the rest of the convoy, but instead that she was turning left and heading directly toward the Barnes. Realizing the danger of collision, those on the Barnes shifted her helm to hard left, put her engines full ahead, and sounded a danger signal in order to allow the Liveley to cross under her stern, but the manoeuvre swung her stern to the right or toward the Liveley. To counteract this, the Barnes again shifted her helm to full right in an attempt, which proved successful, to swing her stern clear of the Liveley. While she was thus turning to the right, she observed the Pan Virginia off

her port bow but too late to avoid the collision despite efforts made by the Barnes to do so. In these circumstances, while in extremis, the Barnes immediately sounded the danger signal, followed by a one blast signal, reversed her engines full speed, sounded a three blast signal, and put her rudder hard left in an endeavor to avoid the Pan Virginia.

The trial judge found that when the southbound convoy was two and probably three miles away, the master of the Barnes detected the lights of the southbound convoy, including those of the Pan Virginia, but that from the time the Barnes' turn to starboard was initiated and he noticed the port movement of the Liveley, her officers and crew were engaged in a desperate effort to avoid the approaching Liveley; that it required their complete and undivided attention; that as a result they did not note the continued movement and close approach of the Pan Virginia, which they had no reason to anticipate; that even if they had, they would have been compelled by the conduct of the Liveley to do only what the Barnes actually did—in other words, that the Barnes was relieved of any choice or alternative and that, therefore, the Barnes cannot be considered to have been negligent in any respect.

It is impossible to hold that the exercise of judgment by the master of the Barnes was without warrant in view of the immediate danger to the latter resulting from the change of course of the Liveley and her close proximity, and it would be still less reasonable to regard the finding of the trial court as clearly erroneous. The emergency was great and the determination of what to do to meet the impending danger was not dependent on awareness of the presence of the Pan Virginia, the navigation of which was admittedly negligent with respect to the Barnes. In these exigent circumstances, it cannot be said that the Barnes was obliged to look for another less proximate danger, or that, if she had, she could have done anything to avert the collision.

It is contended on behalf of the Liveley that she did not disobey the order of the Commodore, but started to proceed

to starboard as the order required and changed her course only when she saw the green light of the Pan Virginia, which would cross her course if she continued on as directed. She therefore swung to port and thereby forced the Barnes to do the same thing in order to avoid collision with her. The trial judge disbelieved this story and substantially adopted that of the Barnes to the effect that the Liveley violated the order of the Commodore by proceeding to port instead of to starboard, thus upsetting the navigation which had been planned for the northbound convoy. The judge also found that the testimony of the Liveley that she saw the Pan Virginia at a time when, according to the evidence, the latter was on a course of approximately 195° true was not to be believed because the green lights of the Pan Virginia could not have been seen by the Liveley at such an angle. This, like the other findings of the District Judge which we have discussed, was supported by substantial evidence and cannot be regarded as clearly erroneous. We accordingly hold that the claim of the Liveley that she was free from fault is not made out.

There is also a claim, which we have not yet discussed, made by the owner of the Pan Virginia against the United States for damage done to the Pan Virginia in her collision with the Barnes. The trial judge held that this collision was occasioned by the negligence of the Pan Virginia and the Liveley, and we have affirmed this holding. He denied the claim of the owner of the Pan Virginia for the damages to her because it was supported by no proper pleading filed within the two years required by Section 5 of the Suits in Admiralty Act, 46 U.S.C.A. § 745.

The answer of the Pan Virginia to the libel, which was filed within two years after the collision, alleged that the Pan Virginia suffered damage as a result of the collision, that the damage was caused by the negligence of both the Liveley and the Barnes, and set forth the acts of negligence relied on. The Barnes was held free from fault and we have already affirmed that holding. The answer not only asked for dismissal of the libel of the Barnes, but prayed "for such other and further relief as in law and justice it may be entitled to receive." A copy of this answer was served by the proctors for the Pan Virginia on the proctors for the United States.

After the time had expired within which the owner of the Pan Virginia could lawfully assert a claim against the United States, the former served a cross-libel upon the Barnes, and the Barnes thereafter filed a petition impleading the United States and asking that it pay such damages as the cross-libellant Pan Virginia might be entitled to because of the negligence of the Liveley. The United States set up answers to both the impleading petition and the cross-libel of the Pan Virginia, asserting the bar of the statute of limitations. The District Judge dismissed the cross-libel on the merits as against the Barnes, and dismissed the impleading petition as against the United States because of the bar of the statute of limitations. The correctness of this decision is manifest and we believe cannot be seriously questioned on appeal.

As respects the answer of the Pan Virginia, the District Judge held that on its face it is insufficient to assert any claim of Pan Virginia for affirmative relief against the United States and also that such a claim even if it had been clearly asserted, should have been set forth by a cross-libel. In our opinion, this holding involved too technical a view of present pleading requirements.

It is undoubtedly the more approved admiralty practice to set up such a claim for affirmative relief as the Pan Virginia wishes to assert by means of a cross-libel, yet we are referred to no decision where a party has attempted to secure affirmative relief from a court of admiralty and has been denied the right owing to inartificial pleading, after the statute of limitations has run. Such decisions as Ward v. Chamberlain, 21 How. 572, 62 U.S. 572, 16 L.Ed. 219, and The Dove, 91 U.S. 381, 23 L.Ed. 354, which undoubtedly paid homage to cross-libels as the most appropriate vehicles for obtaining affirmative relief dealt with no such situation as we have here. The statement in Bowker v. United States, 186 U.S. 135, 22 S.Ct. 802, 46 L.Ed. 1090, that a claim for affirmative relief must be asserted in admiralty by a cross-libel, was a dictum;

the case merely held that the dismissal of a cross-libel was not appealable under the then-existing statute until the libel itself was disposed of. None of the decisions of the lower courts, to which we have been referred required cross-libels where the persons seeking relief had by other pleading asserted a claim which would be barred by the statute of limitations if it was rejected through failure to set it up in a cross-libel.

We may add that the equitable treatment of parties by courts of admiralty and the early abandonment in equity of the former requirement that a claim to affirmative relief be set up by a cross-bill make us unwilling to treat the situation here as a mere matter of formal pleading. Corcoran v. Chesapeake & Ohio Canal Co., 94 U.S. 741, 24 L.Ed. 190. We therefore regard the answer of the owner of the Pan Virginia asking for further equitable relief which was served on the proctors for the United States as sufficient to comply with the equitable doctrine we have referred to. It is the New York practice to ask for equitable relief in a situation like the present by serving a cross-answer on the attorney for a defendant against whom relief is sought, N.Y. Civil Practice Act, § 264, and a cross-libel in personam may apparently be served in the same way without further process against a cross-respondent. The Eliza Lines, C.C. S.Mass., 61 F. 308, 322-324.

■ The allegations of the answer of the owner of the Pan Virginia and its service upon the proctors for the United States support our view and we cannot see anything surprising or otherwise unfair to the United States in the method of pleading employed. All the facts necessary to support a cross-libel were pleaded in the answer. The negligence of the Barnes, the Pan Virginia and the Liveley was the question involved and any prepara-

tion to deal with that question was relevant to a determination of the liability of the United States to the Pan Virginia. The fact that the claim of the Pan Virginia was at one point designated as a defense did not negative its efficacy as a claim, when all the facts showing liability of the United States were set forth and the claimant asked for other and further relief. See opinion of Cardozo, J., in Susquehanna Steamship Co., Inc. v. A. O. Andersen & Co., Inc., 239 N.Y. 285, 290-291, 146 N.E. 381. Indeed, we might say the pleading was in all essentials a cross-libel and differed from one only in nomenclature. The analogy of Rules 8(c) and 54(c), Federal Rules of Civil Procedure, 28 U.S.C.A., also is persuasive as dispensing with literal adherence to the designation of a pleading as a defense or counterclaim, and allowing a judgment for the relief to which a party is shown to be entitled, even where it has not been precisely asked for. The equitable considerations which prompted these rules should be applied to. proceedings in admiralty. See Schiavone-Bonomo Corp. v. Buffalo Barge Towing Corp., 2 Cir., 134 F. 2d 1022.

■ Local Admiralty Rule XVII of the Southern District of New York relates only to a claim made by a respondent against a libellant and does not cover the present case, even if it were controlling as to pleading requirements in other situations.

For the foregoing reasons, the decree is modified to the extent of remanding the cause to the District Court, with directions to allow Pan Virginia to recover any damages which may have been caused by the negligence of the Liveley and for an equitable apportionment of the damages to the Barnes and Pan Virginia as between the owner of the Pan Virginia and the United States, and is otherwise affirmed.