**RYAN STEVEDORING CO., Inc. v. UNITED STATES.**

No. 270, Docket 21335.

United States Court of Appeals Second Circuit.

Argued May 9, 1949.

Decided June 6, 1949.

John C. Crawley, of New York City (Barry, Wainwright, Thacher & Symmers, Paul L. Clugston and John F. Whicher, all of New York City, on the brief), for appellant.

Benjamin H. Berman, Sp. Atty., Dept. of Justice, Washington, D. C. (John F. X. McGohey, U. S. Atty., of New York City, on the brief), for appellee.

Before CHASE, CLARK, and DOBIE, Circuit Judges.

CLARK, Circuit Judge.

The present proceeding is an impleading petition for exoneration or indemnity against the United States of America brought by a respondent in a libel from whom the original libelant had sought damages for injuries to its derrick lighter Abbate, occasioned by a fire on a Hoboken pier on August 11, 1944. In the libel it was alleged that, while the lighter was discharging its cargo at the pier, the respondent, here the petitioner-appellant, carelessly permitted and caused a chisel truck it was operating to collide with some metal drums on the pier containing highly explosive and inflammable material and that it caused and allowed a packing box on the truck to drag along the pier floor emitting sparks causing the fire which spread to the ship. Appellant now seeks to hold the United States of America on an impleading petition for any damages it may have to pay for the fire, alleging that these drums contained nitrocellulose about to be loaded on a government vessel lying alongside the pier, consigned to the Administrator, War Shipping Administration, as principal, for account of the Government Purchasing Commission of the Soviet Government and about to be shipped to Murmansk, Russia, and that they were so improperly packed and stored and inspected by the government that the fire was due to the latter's negligence. It alleges further that at the time it was performing stevedoring services for the United States under a contract whereby the latter agreed to indemnify it against any liability for property damage in excess of the sum of $250,-000 per accident; but it asserts, in addition, that irrespective of this agreement it is entitled to be completely indemnified be-

cause of the active and affirmative negligence of the United States without any active or affirmative negligence on its part. The basis for suit against the government is alleged to be the Suits in Admiralty Act, the Tucker Act, or the Federal Tort Claims Act. But upon exception by the United States the district court found none of them adequate and dismissed the impleading petition. This appeal followed.

Appellee's claim that this decree of dismissal is not appealable must be denied. The statute now provides that interlocutory decrees "determining the rights and liabilities of the parties to admirality cases" are appealable. 28 U.S.C.A. § 227, now § 1292(3); Benevento v. United States, 2 Cir., 160 F.2d 487, 488; Barbarino v. Stanhope S. S. Co., 2 Cir., 151 F.2d 553, 555. We must therefore consider whether or not the asserted waiver of immunity can be found under the terms of any of the three Acts relied upon.

Of the three, the Suits in Admiralty Act presents the most interesting and novel problems, as applied to the circumstances of this case. Passed in 1920, it came into being not only as a waiver of governmental immunity, but also as a limitation upon an earlier waiver; for an act of 1916, 46 U.S.C.A. § 8014 et seq., had been construed to permit seizure of government vessels in the merchant service upon process in rem, to the vast embarrassment of the governmental ventures. Canadian Aviator, Limited v. United States, 324 U.S. 215, 65 S.Ct. 639, 89 L.Ed. 901; 1 Benedict on Admiralty 440, 441, 6th Ed. 1940; Robinson on Admiralty 270, 271, 1939. Consequently the first provision of the 1920 act is an explicit prohibition—made "in view of the provision herein made for a libel in personam"—of arrest or seizure by judicial process of any vessel owned by the United States (or by any governmental corporation as therein defined). 46 U.S.C.A. § 741. It then provides: "In cases where if such vessel were privately owned or operated, or if such cargo were privately owned and possessed, a proceeding in admiralty could be maintained at the time of the commencement of the action herein provided for, a libel in personam may be brought against the United States or against any corpora-

tion mentioned in section 741 of this title, as the case may be, provided that such vessel is employed as a merchant vessel or is a tugboat operated by such corporation. Such suits shall be brought in the district court of the United States for the district in which the parties so suing, or any of them, reside or have their principal place of business in the United States, or in which the vessel or cargo charged with liability is found." 46 U.S.C.A. § 742. And the next section, 46 U.S.C.A § 743, inter alia, gives the libelant an election to proceed in his suit "in accordance with the principles of libels in rem wherever it shall appear that had the vessel or cargo been privately owned and possessed a libel in rem might have been maintained."

The grant of authority for the suit here relied on is that portion of the second section which provides for a libel in personam where, "if such cargo were privately owned and possessed," a proceeding in admiralty could have been maintained; and the argument is that these drums, from which the fire spread by reason of their condition, were "cargo" within the statutory meaning because they were about to be loaded upon a government steamer already tied up at the same pier. Indeed, much is now made of an incidental and general allegation, accompanying the assertions as to prospective loading of the nitrocellulose on the pier, that "certain of said drums had been loaded upon said steamer."

It is perhaps strange that, although the remainder of this statute has been extensively litigated, there seems almost no litigation, and certainly no decision, dealing with the meaning of cargo in this connection. But we apprehend that it will be found as difficult as the remaining portions have already proved to be. In his careful consideration of the problem the district judge suggested as possible grounds for denying applicability of the statute that this was a land, not a maritime, tort, and that he knew of no rule of law making cargo subject to arrest "except only for charges upon it that may arise from its carriage" and that only claims for such charges "could intelligently have been intended to be included" in the coverage of the Act. But we are constrained to have some doubt.

as to these grounds. Following the well-known demarcation of maritime from land torts, that it is the place of consummation of the tort, or impact causing the damage, it would seem to be found reasonably, if not unmistakably, upon the water, i e., where the fire struck the "Abbate." Robinson on Admiralty 76-81; 1 Benedict on Admiralty 349-359, 6th Ed.; Brady v. Roosevelt S. S. Co., 317 U.S. 575, 63 S.Ct. 425, 87 L.Ed. 471; Leonard v. Decker, D.C. S.D.N.Y., 22 F. 741. Moreover, while the usual cases of liability of cargo are for freight or general average, and while clearly the fault of the ship is not imputed to the cargo also, Robinson on Admiralty 405, cf. also 359, 864-866; The Atlas, 93 U.S. 302, 23 L.Ed. 863, it seems not beyond the realm of possibility that cargo might be considered an active cause of harm. Thus in The Lord Derby, C.C.E.D.La., 17 F. 265, the libel for the bite of a dog was actually against the ship; as Robinson points out, op. cit., the court carefully refrained from any discussion as to a libel against the dog. But why not? Compare United States v. Freights, etc., of The Mount Shasta, 274 U.S. 466, 47 S.Ct. 666, 71 L.Ed. 1156. Indeed, the several references in the statute cited above seem to assume a liability in cargo equal to, or co-ordinate with, that of a vessel. We do not feel, therefore, that we can safely read the statute as narrowly as would be thus indicated.

Nevertheless, we agree with the district judge upon the ground which he actually chooses, that the liability referred to in the statute as arising from the government's ownership of cargo must be one "directly connected with the Government's ownership and operation of a vessel," citing American President Lines v. United States, D.C.S.D.N.Y., 75 F.Supp. 110, 112, which is in accord. The chief ground for a more extended view comes from the holding that the action against the government is not a mere substitute for an action in rem with the right of arrest taken away, and hence may be maintained when the res is no longer in existence. This was the decision in the controlling case of Eastern Transp. Co. v. United States, 272 U.S. 675, 47 S.Ct. 289, 71 L.Ed. 472, involving injury from the wreck of a government merchant vessel; but—notwithstanding some earlier conflict in the lower courts—it now seems a necessary conclusion from the statute as a whole, particularly in the light of the election of remedies given the libelant in the third section. It does not go so far, however, as to dispense with a vessel or cargo altogether. On the contrary, we have found no case suggesting that one or the other is not necessary.

Several further considerations pointing the same way must be noted. First there is the proviso requiring "that such vessel is employed as a merchant vessel," which has led to all the learning expended upon establishing the distinction between merchant vessels and other vessels of the government. See, e. g., The Western Maid, 257 U.S. 419, 431, 42 S.Ct. 159, 66 L.Ed. 299; James Shewan & Sons v. United States, 266 U.S. 108, 45 S.Ct. 45, 69 L.Ed. 192; Lauro v. United States, 2 Cir., 162 F. 2d 32, 35; Bradey v. United States, 2 Cir., 151 F.2d 742, certiorari denied 326 U.S. 795, 66 S.Ct. 484, 90 L.Ed. 483; United States v. Caffey, 2 Cir., 141 F.2d 69, certiorari denied 323 U.S. 750, 65 S.Ct. 84, 89 L.Ed. 601. Next is the provision as to place of suit, which may be brought in the district "in which the vessel or cargo charged with liability is found." This has led to a great deal of litigation as to whether the provision is one of venue and waivable, or of jurisdiction, not to be waived, as admirably surveyed by Judge Kennedy in Sawyer v. United States, D.C.S.D.N.Y., 66 F.Supp. 271; but there is no suggestion that they may be omitted altogether. Finally there is the general picture of governmental immunity in admiralty taken in connection with the Public Vessels Act, which supplements it to make a rounded whole. United States v. Caffey, supra; Mejia v. United States, 5 Cir., 152 F.2d 686, certiorari denied 328 U.S. 862, 66 S.Ct. 1366, 90 L.Ed. 1632. There is no suggestion in either act that governmental immunity is to be waived in essentially every case which can be brought in the admiralty; even the Canadian Aviator case, supra, which extended the public-vessel liability beyond the physical blow of the ship itself, was careful to limit it to acts of the ship's personnel. In short there is nothing comparable to the re-

cent Federal Tort Claims Act, passage of which makes unnecessary distortion of these acts so clearly designed to apply to the extensive shipping operations of the United States which began with the First World War.

■ On this basis no grounds of governmental liability under the Suits in Admiralty Act are disclosed here. The government steamer tied up at the dock and the "certain" drums already loaded upon it were mere bystanders at the accident. (This is the force of all the allegations of both the libel and the impleading petition; nor did appellant seek to amend to show anything different after it had received the court's memorandum below.) And the drums on the pier, even if about to be loaded upon a vessel, cannot be considered cargo in any real sense having to do with navigation of government vessels. Here there seems no reason why the standard test of admiralty—location—should not be given its natural effect. Robinson on Admiralty 31 et seq.; 1 Benedict on Admiralty 349–352, 6th Ed. Accordingly we hold that this ground of exception was properly sustained.

Appellee has also claimed, alternatively, that in any event any claim under this Act was barred by the requirement that "suits hereunder shall be brought within two years after the cause of action arises." 46 U.S.C.A. § 745. Appellant relies on the rather usual rule, 3 Moore's Federal Practice ¶14.09, 2d Ed. 1948, that a claim for indemnity accrues only for the purpose of limitation when the indemnitee has been subjected to liability. Here, while the accident occurred on August 11, 1944, the impleading petition was filed on January 19, 1948, or with reasonable promptness after the bringing of the original libel on August 9, 1947. There are some district court decisions applying the stated rule to this particular limitation in the case of an agent's claim for indemnity against the United States. Hidalgo Steel Co. v. Moore & McCormack Co., D.C.S.D.N.Y., 298 F. 331; The Englewood, D.C.S.D.N.Y., 1925 A.M.C. 871; and compare also cases such as Federal Reserve Bank of Atlanta v. Atlanta Trust Co., 5 Cir., 91 F.2d 283, 285, 117 A.L.R. 1160, certiorari denied Atlanta Trust Co. v. Federal Reserve Bank of Atlanta, 302 U.S. 738,

58 S.Ct. 140, 82 L.Ed. 571; Admiral Oriental Line v. United States, 2 Cir., 86 F.2d 201, 204; Lyons-Magnus, Inc., v. American-Hawaiian S. S. Co., D.C.S.D.N.Y., 41 F. Supp. 575. These, however, are cases where the duty to indemnify a subordinate is clear—as would be the case under the contract alleged here, once the appellant's losses reached $250,000—not the addition or substitution of an additional or sole tortfeasor. See Brady v. Roosevelt S.S. Co., supra, 317 U.S. 575, at page 582, 63 S.Ct. 425, 87 L.Ed. 471, citing 4 Williston on Contracts § 1026, Rev.Ed.1936; Tice Towing Line v. James McWilliams Blue Line, 2 Cir., 57 F.2d 183, modifying D.C.S.D. N.Y., 51 F.2d 243. An impleading petition against the United States should be dismissed where the bar of the statute obtains. Esso Standard Oil Co. v. United States, 2 Cir., 174 F.2d 182. This ground was not, however, relied on by the district judge and is not necessary to our present decision.

■ The Federal Tort Claims Act, enacted August 2, 1946, seems clearly inapplicable. It grants a remedy on "any claim against the United States, for money only, accruing on and after January 1, 1945, on account of damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government," etc. 28 U.S.C.A. § 931, now restated in § 1346(b). Hence liability exists only for torts committed on or after January 1, 1945. Niagara Fire Ins. Co. v. United States, D.C.S.D.N.Y., 76 F.Supp. 850, 853, 854. Moreover, suit must be brought within one year after either the date of accrual of the claim or August 2, 1946, whichever is later. 28 U.S.C.A. § 942, now § 2401; Sweet v. United States, D.C.S.D.Cal., 71 F.Supp. 863. A later accruing claim for indemnity because of an earlier tort would seem not freed from that bar.

■ Nor are immediate grounds of jurisdiction under the Tucker Act, 28 U.S. C.A. § 41(20), now § 1346(a) (2), shown. The original libel asserted a claim against appellant of "approximately" $7,000. Appellant attempts to reach the $250,000 minimum expressed in the provision for reimbursement of its stevedoring contract with

the United States by alleging generally that claims of various third persons "aggregating far more than $250,000 have been asserted against petitioner independently of the present libel." Such hypothetical and highly speculative liability would afford no ground for independent suit against the United States at this time. Grant v. United States, 7 Wall. 331, 74 U.S. 331, 338, 19 L.Ed. 194; Marion & R. V. R. Co. v. United States, 270 U.S. 280, 282, 46 S.Ct. 253, 70 L.Ed. 585. It is true that an impleading petition may be entertained before the liability of the petitioner is finally fixed; thus one may seek exoneration from a claim before it has been adjudicated. Admiral Oriental Line v. United States and Lyons-Magnus, Inc. v. American-Hawaiian S. S. Co., both supra. But the district court seems quite justified in dismissing at this time so highly speculative a claim as this now is. Should liability become more imminent, impleader may then be sought.

Decree affirmed.