Massoad Abdallah HIDICK, Plaintiff,

v.

ORION SHIPPING AND TRADING CO., Inc., and Pacific Cargo Carriers Corporation, Defendants.

PACIFIC CARGO CARRIERS CORPORATION, Third Party Plaintiff,

v.

UNITED STATES of America, Third Party Defendant.

PACIFIC CARGO CARRIERS CORP., as owner of THE SS SEACORONET, Libelant,

v.

UNITED STATES of America, Respondent.

United States District Court
S. D. New York.

Nov. 15, 1957.

478

Nelson, Healy, Baillie & Burke, New York City, for defendants, third party plaintiff and libelant, Allan A. Baillie, New York City, of counsel.

Paul W. Williams, U. S. Atty., New York City, for third party defendant and respondent, Gilbert S. Fleischer, of counsel.

HERLANDS, District Judge.

This opinion will decide the common questions of law—concerning the Government's liability—which are raised by the Government's motions in the two above-entitled cases.

The action in which Hidick is plaintiff and the Government is third party defendant will be referred to herein as "the civil case." The action in which Pacific Cargo Carriers Corp. is libelant and the Government is respondent will be referred to herein as "the admiralty case."

*Government's Motion in the Civil Case*

In the civil case, the Government moves, pursuant to Fed.Rules Civ.Proc. rule 12(b), 28 U.S.C.A., to dismiss the third party complaint against it on three grounds:

(1) that this Court lacks jurisdiction over the subject matter because the third party plaintiff, Pacific Cargo Carriers Corporation (referred to herein as "Pacific"), failed to start the action against the Government "within two years after the alleged cause of action arose," as required by the Suits in Admiralty Act, 46 U.S.C.A. § 745;

(2) that this Court lacks jurisdiction over the Government, as third party defendant, because Pacific, as third party plaintiff, failed to start the action against the Government within the said two-year period, as required by the foregoing provision of the Suits in Admiralty Act; and

(3) that the third party complaint fails to state a claim upon which relief can be granted.

Harry Ruderman, New York City, for plaintiff.

*Government's Motion in the Admiralty Case*

In the admiralty case, the Government excepts to the amended libel on three grounds:

(1) that the amended libel does not state "facts sufficient to constitute a cause of action";

(2) that the amended libel does not state facts sufficient to constitute a cause of action "within the jurisdiction" of this Court; and

(3) that this Court lacks jurisdiction "over the subject matter of this suit and over the respondent" because libelant Pacific failed to start the action "within two years after the alleged cause of action arose," as required by the Suits in Admiralty Act, 46 U.S.C.A. § 745.

*Background Facts of the Litigation*

Pacific is the owner of the S.S. Seacoronet. On April 22, 1952, Pacific entered into a time charter of said vessel with the Government as charterer. Copies of the time charter (Contract No. MST-1102, MSTS Dry Cargo War Risk Form) are annexed to the third party complaint in the civil case (as Exhibit Y) and to the amended libel in the admiralty case (as Exhibit A). The pertinent provisions of the time charter are set forth in the course of this opinion.

On August 17, 1953, at Pusan, Korea, the vessel was loading what was purported to be scrap. A full container of chlorine gas which was loaded with the scrap became unsealed in the handling thereof, releasing the gas throughout the ship. As a result of the inhalation of the gas fumes, numerous seamen brought claims against Pacific, as the shipowner, alleging unseaworthiness of the vessel and negligence. Pacific claimed that the accident was caused solely by the Government's negligence.

The pending admiralty case was commenced on July 26, 1956. An amended libel was filed on March 28, 1957. In that case, Pacific seeks indemnification from the Government for payments made to date to eight crew members by way of settlement[1] or satisfaction of judgments[2] obtained after trial and for ex-

---

1. The claim of one seaman was settled on June 9, 1956, after action was brought by him in the City Court of the City of New York. The payment made to him and the expenses in defending the action are the basis of the first cause of action in the admiralty case.

2. The second cause of action in the admiralty case is predicated upon the payments (in November 1956) of judgments recovered in June 1956 by seven other crew members and the expenses in defending the common law actions brought by them. In all of these actions the United States was impleaded. A joint trial had in the United States District Court for the Western District of Washington, Northern Division, resulted in verdicts for the plaintiffs in substantial amounts. After the verdicts were returned, the trial judge dismissed the claim over against the United States without prejudice, on the ground that the venue was not proper. An appeal was taken both from the seamen's judgments and the order. The Government was duly notified and given the opportunity to take over the appeal if it wished to do so, but it declined. Pacific paid the seamen's judgments but continued the appeal from the trial judge's refusal to consider the claim over against the Government.

On July 25, 1957, the Court of Appeals for the Ninth Circuit handed down a decision reversing the trial judge's dismissal of the claims over against the Government and sending the matter back to the District Court with instructions to transfer the cases to the United States District Court for the Southern District of New York for further proceedings. *Orion Shipping & Trading Co. v. U. S.*, 247 F.2d 755.

Pacific's present memorandum (p. 3) states:

"The transferring of the cases will probably result in elimination of the second cause of action stated in the amended libel, with the possible exception that expenses incurred in defending the actions in the United States District Court for the Western District of Washington will still be claimed. It will also make moot the Government's objection on the ground of expiration of the time to sue with respect to so much of the total claim as is based upon the judgments."

penses incurred in defending the actions brought by these crew members.

In the pending civil case, another injured crew member, Hidick, brought an action on December 23, 1954 in this district against Pacific and Pacific's operating agent, Orion Shipping and Trading Co., Inc. A third party complaint by Pacific against the Government was filed on March 7, 1957, i. e., more than two years after the occurrence of the accident on August 17, 1953.[3]

## Material Recitals in the Pleadings

Because defendant's motions are directed to the alleged insufficiency of the amended libel and the third party complaint, as disclosed by the facts appearing on the face thereof, it is necessary to summarize the material allegations in those pleadings.

### A. The Admiralty Case

The amended libel, filed on March 28, 1957, sets forth two causes of action. The first based upon the Suits in Admiralty Act (Amended libel, para. Twenty-First) describes the circumstances under which Pacific paid a crew member, one Robert L. Wilson, the sum of $1,230.65 on account of injuries received by Wilson on August 17, 1953, when he inhaled poisonous gas fumes.

The amended libel further alleges, *inter alia,* as part of the first cause of action:

that the Government was the time charterer of the vessel pursuant to the terms of the charter party, Exhibit "A"; that on August 17, 1953, at Pusan, Korea, the Government was loading a cargo into the vessel's holds, and that the cargo consisted, in part, of gas cylinders, "which the Master and officers of the said vessel had been informed and believed were empty and free of gas"; but that one of the gas cylinders contained poisonous gas which was "permitted by" the Government to escape and penetrate the crew quarters (para. Fifth);

that the escape of the poisonous gas "was due to the failure and neglect" on the Government's part "to comply with and properly perform the duties and obligations" of the Government "under the terms of the aforesaid contract of charter party," in that the cargo of gas cylinders "was not properly loaded" and the Government "loaded such dangerous and poisonous cargo at its own risk" (para. Sixth);

that Pacific had not committed any acts of negligence and that the loading of said cargo was not under Pacific's "control" (para. Seventh);

that "under the terms and conditions of the aforesaid contract of charter party, the respondent [the Government] was required to and did assume all responsibility for the loading and discharging of the S.S. Seacoronet * * *" (para. Eighth);

that a crew member, one Robert L. Wilson, claimed to have been injured by the escaping poisonous gas (para. Tenth); that, as a consequence, said Wilson sued Pacific and Orion in the City Court of the City of New York for $6,000. (para. "Eleventh"); that Pacific duly notified the Government of that lawsuit and called upon the Government to assume the defense of that action, but the Government refused to take part in either the defense or settlement of that action (paragraphs Thirteenth and Fourteenth);

that thereafter Pacific settled the action for $750, in addition to the sum of $136 previously paid to Wilson for maintenance and cure; and Pacific also incurred legal expenses and disbursements in the amount of $344.65; so that Pacific's present total claim against the Government arising out of the Wilson case is for $1,230.65 (paragraphs Fifteenth to Nineteenth);

that it is the Government's duty "by reason of the matters aforesaid and pursuant to the terms and conditions

3. One motion to dismiss the third party complaint has already been made in this action and determined adversely to the Government by District Judge Palmieri. D.C., 152 F.Supp. 630.

of the contract of charter party * * * to indemnify" Pacific for its damages (para. Twentieth).

The second cause of action is based upon the fact that seven other crew members sued Pacific for similar injuries arising out of the accident on August 17, 1953 (paragraphs Twenty-Third to Twenty-Seventh).

The amended libel further alleges, *inter alia*, as part of the second cause of action:

that the Government was impleaded as a party-defendant in said actions "and was represented by counsel at the subsequent trial of the actions" (para. Twenty-Ninth);

that eventually Pacific paid the suing crew members $148,438.80 in satisfaction of judgments obtained by them after trial, and in addition Pacific incurred $7,603.75 legal expenses and disbursements, making Pacific's total claim in the amount of $156,042.55 (paragraphs Thirtieth to Thirty-Third);

that the United States District Judge who tried the actions dismissed, without prejudice, Pacific's claim against the Government for indemnification "on the ground that the Court lacked jurisdiction" over the Government (para. Thirtieth). [The Court of Appeals for the Ninth Circuit, as noted supra, note 2, reversed the District Court on that point and ordered the action for indemnification to be transferred to the Southern District of New York.];

that the Government is under the duty "to indemnify" Pacific to the extent of $156,042.55 (para. Thirty-Fourth).

### B. The Civil Case

The plaintiff, Hidick, filed an amended complaint on November 28, 1956 against Orion, as operator, and Pacific, as owner of the vessel. The amended complaint, based on the August 17, 1953 accident, contains the standard Jones Act allegations charging negligence and unseaworthiness. The answer to the amended complaint admitted defendants' ownership and operation of the vessel, but denied all other material facts.

On February 19, 1957, the Court granted Pacific's unopposed motion for leave to make the Government a party to this action and to cause to be served upon it a third party summons and third party complaint.

Pacific's third party complaint, filed March 6, 1957, sets forth the time charter between Pacific and the Government (Exhibit "Y"), and then makes the following allegations:

that on August 17, 1953, the Government was "loading a cargo into the holds of the vessel," that part of the cargo consisted of "gas cylinders said to be empty and free of gas," and that the loading was being done "by personnel engaged by and under the supervision and control of the" Government (para. 5);

that one of the said gas cylinders contained poisonous gas and that "said gas was permitted by" the Government "to escape and penetrate * * * the crew quarters" (para. 6);

that plaintiff, Hidick, claimed that he was injured by inhaling the poisonous fumes, and also claimed that such injuries were caused by Orion's and Pacific's negligence and the unseaworthiness of the vessel (para. 7);

that under the terms and conditions of the aforesaid contract of charter party the third party defendant [the Government] was required to and did assume all responsibility for the loading and discharging of the S.S. Seacoronet and for the acts or failures to act of the persons engaged by it to accomplish the loading and discharging (para. 8);

that Pacific denies that any negligence on its part or unseaworthiness of the vessel caused plaintiff's injuries but that, if it should be found at the trial that plaintiff's injuries were caused "by some condition for which it can be held liable," then and in that event Pacific alleges that "such condition resulted from the direct and primary negligence of the" Government "and the failure of the" Government "to perform the operation of loading the vessel in a reason-

ably safe manner which it [the Government] was obligated to the third party plaintiff [Pacific] to do by the terms and conditions of the said time charter party" (para. 9);

that if plaintiff recovers against Pacific, then the Government "is liable over to" Pacific "in indemnity for the amount of such recovery" (para. 10).

*The Issues*

Four common issues of law are raised by the exceptions to Pacific's amended libel and the motion to dismiss Pacific's third party complaint:

I. Is there an express indemnity provision in the time charter requiring the Government to indemnify Pacific for the above-described payments?

II. If there is no such express indemnity provision, does the law nevertheless require the Government to indemnify Pacific?

III. Are the actions by Pacific against the Government time-barred?

IV. Are the actions by Pacific against the Government barred by the "dispute clause" contained in the time charter?

**I**

War Risk Addendum to the charter, Article 2(e) provides:

"e. The Charterer shall indemnify and hold harmless the Owner, the Master and the Vessel from all consequences and liabilities whatsoever except those properly chargeable to the Owner under other provisions of this Contract, to the extent not recoverable under the terms of customary hull and P. & I. insurance, arising from compliance with any orders or directions of the Charterer, its agents, representatives or employees. The Owner shall, as far as may be practicable, keep the Charterer through the Contracting officer, currently informed in writing as to any oral orders (involving substantial delay, expense, or risk to the Vessel or her cargo) which have not been promptly confirmed in writing by the person giving such orders."

█ This is the only express indemnity provision in the charter. The sense of this provision is that (with the exception therein noted) the Government, as charterer, shall indemnify Pacific, as owner, from all liabilities arising from the owner's compliance with any orders of the charterer. In the two actions under consideration, the accident and the resulting injuries and liabilities did not arise from Pacific's compliance with any orders of the Government. Hence, the express indemnity provision is inapplicable to the litigation at bar.

**II**

█ Notwithstanding the absence of an express indemnity provision, this Court has concluded that the law requires the Government to indemnify Pacific. This conclusion is predicated upon (A) the duties imposed upon the Government by the charter, (B) the facts pleaded in Pacific's amended libel and third party complaint (which facts must be taken as true for purposes of the pending motions) and (C) the judicial decisions that have established the controlling principles of law in this field.

The charter expressly imposes upon the Government the duty to load the cargo, the duty to pay all expenses directly connected with the loading of the cargo, the duty to check the condition of the cargo upon loading, and the exclusive responsibility for properly loading goods of a dangerous nature. Thus, Article 8(f) provides:

"Cargo shall be loaded, stowed, trimmed, secured and discharged by the Charterer under the Master's supervision."

Article 19(a) provides, in part:

"The Master, officers and crew, in supervising the loading * * * of cargo shall be deemed the agents of the Charterer except in so far as such supervision pertains to the seaworthiness of the vessel."

Article 11(a) provides, in part:

"* * * it is the Charterer's responsibility to tally the cargo and to check the condition thereof upon loading * * *."

War Risk Addendum to MSTS Standard Time Charter, Article 4, provides, in part:

"The Charterer * * * shall be exclusively responsible for proper loading * * * of goods of an inflammable, explosive or dangerous nature * * *."

The Government argues that the charter defines its duties with particularity and that, applying the maxim *expressio unius est exclusio alterius*, the absence of an explicit indemnification provision should be construed as an expression of the parties' intention to exclude liability on the part of the Government by way of indemnity. Thus, the Government points to Article 8(d) of the charter, which provides, in part:

"*Any damages to the Vessel or its equipment* caused by the act, neglect, or failure of equipment of the Charterer, its agents, employees, or contractors in performing the Charterer's duties of loading * * * the Vessel *shall be repaired at the Charterer's expense * * *.*" (Emphasis supplied.)

Although not cited by the Government, the limited indemnity provision in War Risk Addendum, Article 2(e), quoted above, would come within the logical thrust of the Government's argument.

The force of the Government's argument is, however, dissipated by the salient fact that, by the very terms and conditions of the charter, the Government assumed the exclusive responsibility properly to load the cargo, to check the condition of the cargo upon loading, and—specifically—properly to load goods of a dangerous nature. The proper performance of those contract conditions and terms was an obligation expressly assumed and owing by the Government toward Pacific, the shipowner.

As was said by Chief Judge Clark in Sword Line, Inc., v. United States, 2 Cir., 1956, 230 F.2d 75:

"* * * the old Latin maxim *expressio unius* cannot be stressed to defeat the very obvious intent of the parties * * *."

For purposes of these motions, the Government has admitted the factual allegations in the amended libel and third party complaint that its acts of negligence and *only its acts of negligence were* the proximate cause of the crew members' injuries and the consequent liabilities imposed upon Pacific vis-a-vis such injured crew members.

The controlling principle of law which makes the Government an indemnitor of Pacific, has been clearly enunciated in the leading case of Ryan Stevedoring Co., Inc., v. Pan-Atlantic Steamship Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 and expounded in the decisions following the Ryan case, e. g., Shannon v. United States, 2 Cir., 1956, 235 F.2d 457; Connolly v. Weyerhaeuser Steamship Co., 2 Cir., 1956, 236 F.2d 848. Indeed, the facts in the litigation at bar are stronger than those in the Ryan case, for in the present cases the Government expressly promised to assume exclusive responsibility for the proper loading of goods of a dangerous nature.

### III

For the reasons set forth below, the Court is of the opinion that Pacific's actions against the Government were not time-barred. Suits in Admiralty Act, § 5, 46 U.S.C.A. § 745 provides that a suit under that statute "shall be brought within two years after the cause of action arises." Admittedly, the actions herein were brought more than two years after the seamen's alleged injuries were suffered. The crucial question, however, is whether Pacific's causes of action against the Government arose when the seamen suffered their injuries or, on the other hand, when Pacific's loss was first fixed either by force of the judgment obtained against it by the seamen or Pacific's payment of the sea-

men's claim. Obviously the two-year time limitation could not begin to run before the cause of action accrued.

To support its contention, the Government relies on Esso Standard Oil Co. v. United States, 2 Cir., 1949, 174 F.2d 182; Ryan Stevedoring Company, Inc., v. United States, 2 Cir., 1949, 175 F.2d 490, 494, certiorari denied 338 U.S. 899, 70 S.Ct. 249, 94 L.Ed. 553; McAllister Lighterage Lines, Inc., v. Pennsylvania R. Co., D.C.E.D.N.Y.1951, 99 F.Supp. 648 and Hartford Accident and Indemnity Co. v. United States, D.C. S.D.N.Y.1955, 130 F.Supp. 839. An analysis of the cited cases shows that they are inapplicable to the case at bar.

In Esso Standard Oil Co. v. United States, 2 Cir., 1949, 174 F.2d 182, a collision case, a libel in admiralty was filed by Esso (herein referred to as "A") against the Government, as owner of a vessel, and against National Bulk Carriers (herein referred to as "B"). The libel grew out of a collision between A's vessel and B's vessel and the alleged negligence of the Government's vessel in impeding the navigation of A's vessel, so that A's vessel could not avoid colliding with B's vessel. B and the Government were respondents in the libel action.

B served an answer on the libelant and on the Government, in which B not only asked dismissal of the libel, but also all further relief available under the law. Respondent B, as cross-libelant, filed a cross-libel against A's vessel for damages suffered by B's vessel.

Thereupon, A filed an impleader petition and a cross-libel against the Government. The petition by A to implead the Government sought to hold it liable for the damages that B might recover from A because of the negligence of the Government's vessel.

The cross-libel which had been filed by B against A's vessel was filed *after* the time had expired in which B could assert a claim against the Government (at page 185); and, consequently, A's petition to implead the Government was likewise filed *after* the aforesaid time.

The Government, in its answers to both A's impleading petition and cross-libel, asserted the bar of the two-year statute of limitations under the Suits in Admiralty Act.

The District Judge dismissed B's cross-libel on the merits as against A, and dismissed A's impleading petition as against the Government, because of the bar of the statute of limitations.

The Court of Appeals held that, while B was now barred from suing the Government by a cross-libel, in view of the running of the two-year statute of limitations, B's answer, which had been timely filed (and which, as noted, prayed "for such other and further relief as in law and justice it may be entitled to receive") was sufficient to serve as the basis for B's affirmative relief against the Government. The Court of Appeals, therefore, regarded B's answer (as distinguished from a possible cross-libel) as serving the function of a cross-libel because "all the facts necessary to support a cross-libel were pleaded in the answer" (at page 186).

It is important to note that the dismissal of A's impleading petition as against the Government because of the bar of the statute of limitations was neither analyzed nor discussed. It is clear that, in view of the fact that B's cross-libel was dismissed on the merits as against A (at page 185), there was no possible basis for sustaining A's petition to implead the Government. Hence, the dismissal of A's impleading petition has no particular significance with respect to the problem in the case at bar.

In Ryan Stevedoring Co., Inc., v. United States, 2 Cir., 1949, 175 F.2d 490, the proceeding was an impleading petition for exoneration or indemnity against the Government. This petition was filed by the respondent.

The libel against respondent was filed by the original libelant, who had sought damages for injuries to its derrick lighter, occasioned by a fire on a pier on August 11, 1944. The libel alleged that libelant's lighter was discharging its cargo at the pier and that the respondent

negligently permitted its truck to collide with some metal drums on the pier containing inflammable material. As a result of the collision, sparks were emitted causing the fire, which spread to libelant's lighter.

The respondent, by its impleading petition, sought to hold the Government liable for any damages respondent might have to pay for the fire, on the ground that the metal drums contained nitrocellulose, and that the metal drums had been negligently packed, stored and inspected by the Government. The impleading petition further alleged that, at the time, respondent was performing stevedoring services for the Government under a contract whereby the Government agreed to indemnify respondent against any liability for property damage in excess of $250,000. per accident. The impleading petition further asserted that, irrespective of this agreement, respondent was entitled to be completely indemnified because of the Government's active and affirmative negligence, without any active or affirmative negligence on respondent's part.

The basis for respondent's impleading petition against the Government was alleged to be the Suits in Admiralty Act, the Tucker Act or the Federal Tort Claims Act. The Government excepted to the impleading petition; the District Court found that none of the cited statutes applied and dismissed the impleading petition. Upon appeal, the Court of Appeals affirmed the dismissal. The Court of Appeals discussed *seriatim* the question of the applicability of each of the three Acts.

The Court (at page 492) then discussed the question whether the drums from which the fire spread by reason of their condition, were "cargo" within the statutory meaning of that term (as used in the Suits in Admiralty Act, 46 U.S.C.A. §§ 741–743) because the drums "were about to be loaded upon a government steamer already tied up at the same pier." The Court of Appeals held (at page 493) "that the liability referred to in the statute as arising from the government's ownership of cargo must be one 'directly connected with the Government's ownership and operation of a vessel.' " On this point, the Court of Appeals concluded (at page 494) that "the drums on the pier, even if about to be loaded upon a vessel, cannot be considered cargo in any real sense having to do with navigation of government vessels"; and, hence, that the respondent's impleading petition against the Government had been properly dismissed on that ground.

The Court then proceeded to discuss the Government's alternate argument that any claim by respondent against the Government under the Suits in Admiralty Act was barred by the two-year limitation period. 46 U.S.C.A. § 745. However, the Court said (at page 494):

"This ground was not, however, relied on by the district judge and *is not necessary to our present decision.*" (Emphasis supplied.)

Nevertheless, in its *obiter dictum*, the Court recognized "the rather *usual rule,* 3 Moore's Federal Practice para. 14.09, (2d ed. 1948) that a claim for indemnity *accrues only* for the purpose of limitation *when the indemnitee has been subjected to liability.*" (Emphasis supplied.)

The accident had occurred on August 11, 1944; the libel had been filed on August 9, 1947; and respondent's impleading petition had been filed against the Government on January 9, 1948— less than two years after the filing of the libel but more than two years after the occurrence of the accident. Dealing with these facts, the Court then proceeded with its dictum, saying that *"the stated rule" applied only "where the duty to indemnify a subordinate [e. g., an agent] is clear—as would be the case under the contract alleged here, once the appellant's [respondent's] losses reached $250,000*—not the addition or substitution of an additional or sole tortfeasor." (Emphasis supplied.)

The Court was strongly impressed by the fact (at pages 494–495) that, whereas the original libel asserted a claim against

respondent of about $7,000, the respondent—in order to bring itself within the $250,000 minimum specified in the express reimbursement provision contained in its stevedoring contract with the Government—alleged generally that claims of various third persons aggregating more than $250,000 had been asserted against the respondent "independently of the present libel." The Court characterized (at page 495) such claims as "hypothetical and highly speculative liability" and said that they "would afford no ground for independent suit against the United States at this time." Finally, the Court significantly added (at page 495):

"Should liability become more imminent, impleader may then be sought."

The case at bar is, therefore, sharply distinguishable from the Ryan Stevedoring decision just discussed, in that: (1) the Government's duty to indemnify Pacific is clear under the charter here involved; and (2) the liability for which Pacific seeks indemnification from the Government is not hypothetical or speculative but fixed and certain.

In McAllister Lighterage Lines v. Pennsylvania R. Co., D.C.E.D.N.Y.1951, 99 F.Supp. 648, 649, the accident occurred on January 19, 1946. The libelant, on February 26, 1948, filed its libel against the respondent railroad, claiming that it had damaged libelant's barge while it had been in respondent's possession.

The respondent filed its original petition to implead the Government on July 14, 1948; and filed an amended petition on November 10, 1948. Respondent's impleading petitions alleged that the damage to libelant's barge had been caused by the negligence of a Government-owned ship that had collided with libelant's barge. As noted, respondent's impleading petitions were filed more than two years after the date of the accident.

The Government filed an exception to the impleading petitions on the ground that the petitions had not been timely filed in accordance with the Suits in Admiralty Act, 46 U.S.C.A. § 745. The Court dismissed the respondent's impleading petitions because they were filed more than two years after the collision, and they sought "to implead the government as an additional or sole tort-feasor *and not as an indemnitor.*" (Emphasis supplied.)

The McAllister case is plainly distinguished from the present case, where Pacific has impleaded the Government as an indemnitor.

In Hartford Accident & Indemnity Co. v. United States, D.C.S.D.N.Y.1955, 130 F.Supp. 839, the Court interpreted certain provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. Under that Act, the cause of action of a fatally injured employee who has no dependents, is statutorily assigned to the employer on payment (into a special fund) of the amount required by the Act. It was held that such assignment did not create a new cause of action, but merely assigned the old one.

Consequently, the controlling time limitation started to run at the time of the employee's death. As a result, the admiralty action brought by the employer's insurance carrier—commenced more than two years after the death—to recover from the Government the amount paid into the special compensation fund for the death of the employee was time-barred, by virtue of the two year limitation period of the Public Vessels Act, § 2, 46 U.S.C.A. § 782 (which incorporates the limitation period of the Suits in Admiralty Act, § 5, 46 U.S.C.A. § 745). The problem of the Hartford Accident case is not analogous to that in the case at bar.

As has already been indicated, the ordinary rule is that a cause of action for indemnity does not arise, by definition, until there has been a judgment entered against or payment by the indemnitee. Thus, 3 Moore's Federal Practice (2d ed. 1948) para. 14.09, pp. 421–422, states:

"It should be recognized, however, that the applicable statute is not that which governs the plaintiff's claim against the defendant. If defendant has a claim over against a third-party defendant—such as a claim for indemnity, contribution, etc.—the statute usually will not commence to run against the defendant (third-party plaintiff) and in favor of the third-party defendant until judgment has been entered against the defendant, or the defendant has paid the judgment. Thus a defendant may implead a third party to enforce against him a right of contribution, even though the statute may have run on any claim by plaintiff directly against the third party."

The foregoing view is supported by the decisions. In Dell v. American Export Lines, D.C.S.D.N.Y.1956, 142 F. Supp. 511, involving an interpretation of the Suits in Admiralty Act, a longshoreman brought suit against a shipping company for personal injuries. The defendant impleaded as third party defendants the Government, as well as two companies. The third party complaint alleged, among other things, that at the time of the alleged injury to the plaintiff, the Government was loading cargo aboard defendant's vessel. The defendant, in its third party complaint, "claims indemnity for any judgment that may be rendered against it in the parent action" (at page 512). District Judge Dimock (at page 513, footnote 1) said:

"No limitation period is involved. The claim against the United States is one for indemnity. A claim for indemnity does not accrue until the indemnitee's liability is fixed. Obviously that has not yet occurred in this case. Hidalgo Steel Co. v. Moore & McCormack Co., Inc., D.C.S.D. N.Y., 298 F. 331, 334."

In Chicago, Rock Island & Pacific Ry. Co. v. United States, 7 Cir., 1955, 220 F.2d 939, the Court interpreted the limitation period contained in the Federal Tort Claims Act. In that case, the plaintiff-railroad brought an action against the Government under the Federal Tort Claims Act for indemnification for the amount which the plaintiff had paid to its employee for injuries caused by the negligence of a Government employee in throwing a mail pouch from the postal car of a passing train to a station platform. The railroad settled with, and made payment to, its employee. The action brought by the railroad against the Government was commenced about four and one-half years after the injuries had been sustained by the railroad's employee, but was brought within two years after the railroad settled with, and made payment to, the employee. The Court held that the action was not barred by the two-year limitation period contained in the Federal Tort Claims Act, 28 U.S.C.A. § 2401(b), which provides that "a tort claim against the United States shall be forever barred unless action is begun within two years after such claim occurs * * *."

At page 942, Circuit Judge Major stated the issue as follows:

"The question is whether the two-year limitation period commenced to run on the date payment was made by plaintiff or on the date the injuries were sustained."

Answering this question, the Court said (at page 942):

"It is plain, of course, that no claim accrued to the plaintiff against the government prior to the date when the former made payment to its employee. The government's contention on this point, if sustained, would mean that a suit under the Tort Claims Act could be barred before it came into existence. Such an application of the limitation provision would produce an incongruity which we think should not be made."

To the same effect, see Federal Reserve Bank of Atlanta, etc. v. Atlanta Trust Co., 5 Cir., 1937, 91 F.2d 283, 117 A.L.R. 1160; Hidalgo Steel Co. v. Moore & McCormack Co., D.C.S.D.N.Y.1923, 298 F. 331.

According to the principle of restitution, the Government should be required to indemnify Pacific. It would be both inequitable and illogical to hold that Pacific's cause of action against the Government for indemnification accrued before Pacific's own loss had been fixed by judgment in favor of the injured seamen or by settlement with them.

The principle of indemnity predicated upon considerations of restitution, referred to above, is expressed in American Law Institute, Restitution, p. 331, as follows:

"Title A. Indemnity

§ 76. General Rule.

A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct."

See, also, American Law Institute, Restitution, p. 415, section 95.

This principle of indemnification, based upon considerations of restitution, has been applied in such cases as Barber S.S. Lines v. Quinn Bros. Inc., D.C.D. Mass.1952, 104 F.Supp. 78, 80; Dupuis v. Drytrans, Inc., D.C.S.D.N.Y.1957, 150 F.Supp. 436, 437.

Considerations of contract interpretation and equitable risk allocation must be balanced against the general principle restricting liability of the Government. Such an analysis supports the view that imposes ultimate liability upon that party (1) whose primary and active negligence was the proximate cause of the accident; (2) who was in the better position to have prevented the accident; and (3) who contracted to be responsible for the proper loading of the cargo, particularly cargo of a dangerous nature. The congeries of facts in this case thus calls for the imposition of liability upon the Government. This liability could be asserted by Pacific in a cause of action that arose only after Pacific's own liability had been fixed.

The Court concludes that Pacific's actions against the Government were not time-barred.

IV

The final issue is whether the "disputes clause" contained in the time charter deprives this Court of jurisdiction, as claimed by the Government.

Article 32, the "disputes clause," provides:

"Article 32. Disputes—Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail, or otherwise furnish a copy thereof to the Contractor. Within 30 days from the date of receipt of such copy, the Contractor may appeal by mailing or otherwise furnishing to the Contracting Officer a written appeal addressed to the Secretary, and the decision of the Secretary or his duly authorized representative for the hearing of such appeals shall be final and conclusive; *Provided* that, if no such appeal is taken, the decision of the Contracting Officer shall be final and conclusive. In connection with any appeal proceeding under this clause, the Contractor shall be afforded an opportunity to be heard and to offer evidence in support of its appeal. Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision."

The effect of this disputes clause is to deprive the Court of jurisdiction of any claim "concerning a question of fact" until the administrative process has been completed. Atlantic Carriers, Inc., v. United States, D.C. S.D.N.Y.1955, 131 F.Supp. 1. But, as pointed out by the Court in the Atlantic Carriers case (131 F.Supp. at page 5, note 1), if a claim arising under a dis-

putes clause involves solely questions of law, then the Court has immediate jurisdiction.

In the present posture of this case, there is no disputed question of fact. For purposes of the Government's pending motion to dismiss and its exceptions, the facts are deemed admitted; and the Government has not presented any issue of fact *as between Pacific and the Government* that is encompassed within the disputes clause.

Of course, in Civil No. 97–365, there are issues of fact between Hidick, the plaintiff-seaman, and Pacific. But Hidick is not a party to the time charter; and even if the Government were to take up the defense, the Government could not invoke the disputes clause as against Hidick.

It is possible that the Government may deny parts of Pacific's libel or Pacific's third party complaint, e. g., the allegation that the injury was due solely to the Government's negligence. As yet, there is no indication that the Government will do so; nor has the Government stated that there is an issue of fact as between it and Pacific.

The present motion to dismiss and the exceptions raise only issues of law. Since the Government has not yet pleaded, we cannot anticipate potential issues of fact.

The issue—whether the real dispute is substantially one of "fact"—cannot be solved definitively unless and until sufficient and competent evidence is before the Court on the basis of which that issue may be analyzed and determined.

The Government will be given the opportunity, (within twenty days from the date of the orders to be settled herein) to present and raise that issue either by pleading an affirmative defense or by moving upon an appropriate set of papers. F.R.C.P. rule 12(b); 2 Benedict on Admiralty (1940) section 235.

This motion to dismiss Pacific's third party complaint is denied. The exceptions to Pacific's amended libel are overruled. Settle orders on notice.