UNITED STATES of America, Plaintiff,

v.

GTS ADM. WM. CALLAGHAN, her engines, tackles and appurtenances, etc., Defendant,

GTS ADM. WM. CALLAGHAN, her engines, tackles and appurtenances, etc. and Sun Export Holdings, Inc., Third-Party Plaintiffs,

v.

McALLISTER BROS., INC., Third-Party Defendant.

No. 83 Civ. 7957 (RWS).

United States District Court, S.D. New York.

Sept. 12, 1986.

Walker & Corsa, New York City, for third-party plaintiff; Christopher H. Mansuy, of counsel.

Healy & Baillie, New York City, for third-party defendant; William F. Losquadro, Wegard D. Holby, of counsel.

SWEET, District Judge.

**Prior Proceedings**

McAllister Bros., Inc. ("McAllister") is the third-party defendant to an action initiated by the United States against the HTS ADMIRAL WILLIAM CALLAGHAN (the "CALLAGHAN") seeking damages for the destruction of a pier with which the CALLAGHAN collided. McAllister is the owner of the tug boat that was assisting the CALLAGHAN when the accident occurred. The pilot of the tug at the time of the collision was on board the CALLAGHAN and in control of the ship. The action was subsequently settled as between the United States and the CALLAGHAN.

The third-party complaint was heard before this court in a bench trial held on March 31 and April 1, 1986. An opinion was rendered on June 10, 1986 and judgment entered on June 24, 1986 dismissing

the third-party complaint against McAllister. The judgment was based on the finding that there existed a valid pilotage clause in the contract for tug services entered into by McAllister and the United States which deemed the tug pilot an employee of the CALLAGHAN and thus exonerated McAllister, and that such clause was binding upon the CALLAGHAN. The cross-claim asserted by McAllister against the CALLAGHAN for costs and attorneys' fees incurred in defending the action was dismissed as moot.

In the present motion, McAllister asks this court to amend its findings regarding McAllister's cross-claim and to amend the judgment accordingly. Fed.R.Civ.P. 52(b). For reasons given below, that part of the June 10, 1986 opinion dismissing McAllister's cross-complaint is amended and the court finds the CALLAGHAN, by reason of the pilotage clause, required to indemnify McAllister for the latter's costs and attorneys' fees incurred in the defense of the third-party complaint, subject to future determination by the court as to the actual amounts involved.

## Discussion

■ The standard pilotage clause contained in the contract between the United States and McAllister states:

> When the captain or other officer of any tug furnished for or engaged in the service of furnishing tug power or assistance to a vessel which makes use of or has readily available her own propelling power goes on board said vessel, or any other licensed pilot goes on board said vessel, it is understood and agreed that said tug captain or other officer or licensed pilot becomes the servant of the owners of said vessel in respect to the giving of orders to any of the tugs provided for or engaged in said services and in respect to the handling of the vessel and neither those providing the tug or pilot, nor the tugs, their owners, charterers, operators, managers or agents shall be under any liability for executing the orders of said tug captain or other officer or licensed pilot or be liable for any

damage resulting therefrom, unless the damage is caused by or results from the negligence or wrongful act or omission of the tug owners, charterers, operators, managers, employees or agents of those furnishing the tug or pilot.

That clause is valid and binding on the CALLAGHAN. *United States v. GTS. ADM. WM. CALLAGHAN*, 638 F.Supp. 687 (S.D.N.Y.1986). Such clauses have long been interpreted as indemnity agreements between the tug company and the ship owners, covering damages resulting from the tug pilot's actions while aboard the ship. *Moran Towing & Transportation Co., Inc. v. Navigazione Libera Triestina, S.A.*, 92 F.2d 37, 41 (2d Cir.1937); *Pennsylvania Railroad Co. v. The S.S. BEATRICE*, 161 F.Supp. 136, 149 (S.D.N.Y.1958).

In the United States, awards of attorneys' fees are the exception rather than the norm, absent a statute or contract providing therefor. *See Ocean Barge Transport v. Hess Oil Virgin Islands*, 598 F.Supp. 45, 47 (D.St.Croix 1984), *aff'd* 760 F.2d 257 (3d Cir.1985). Nevertheless, indemnity under pilotage clauses commonly includes the reasonable costs and attorneys' fees incurred by the indemnitee tug company. *Moran Towing & Transportation Co., Inc., supra*, 92 F.2d at 41; *City of Boston v. S.S. TEXACO TEXAS*, 773 F.2d 1396, 1400 (1st Cir.1985) ("Even absent specific language providing for the payment of attorneys' fees, an indemnitee is entitled to such fees") (citing *Cormier v. Rowan Drilling Co.*, 549 F.2d 963, 971 n. 9 (5th Cir.1977)). Recovery for these expenses, however, may only be had for the indemnitee's defense of "a claim as to which he is indemnified, [and] he may not recover fees and expenses incurred to establish his right against the indemnitor." *Peter Fabrics, Inc. v. S.S. HERMES*, 765 F.2d 306, 315 (2d Cir.1985) (citations omitted).

■ This exception is based on the well-established rule that attorneys' fees are awarded where an indemnitee has been required to defend a lawsuit.

Indemnity obligations, whether imposed by contract or by law, require the indemnitor to hold the indemnitee harmless from costs in connection with a particular class of claims. Legal fees and expenses incurred in defending an indemnified claim are one such cost and thus fall squarely within the obligation to indemnify. Consequently, attorney's fees incurred in defending against liability claims are included as part of an indemnity obligation implied by law, and reimbursement of such fees is presumed to have been the intent of the draftsman unless the agreement explicitly says otherwise.

*Peter Fabrics, Inc. v. S.S. HERMES, supra,* 765 F.2d at 316 (citations omitted). *See also Miller Yacht Sales, Inc. v. M.V. VISHVA SHOBHA,* 494 F.Supp. 1005, 1014 (S.D.N.Y.1980) (attorneys' fees are awarded "in indemnification cases to the extent of the fees expended in defending against the original suit") (citing *David Crystal, Inc. v. Cunard Steam-Ship Co.,* 339 F.2d 295, 300 (2d Cir.1964), *cert. denied,* 380 U.S. 976, 85 S.Ct. 1339, 14 L.Ed.2d 271 (1965)); *E.I. DuPont De Nemours & Co. v. Riverway,* 639 F.2d 404, 407 (8th Cir. 1981) ("indemnity in the admiralty context should embrace all reasonable and necessary expenses of defending [and there is] no basis for specially denegrating attorneys' fees"). Under these cases, CALLAGHAN as indemnitor is accountable to McAllister, as indemnitee, for the reasonable costs and attorneys' fees incurred in defending CALLAGHAN's third-party complaint.

That the complaint in the instant action was dismissed as against McAllister does not affect the right to indemnification. The pilot's actions have been found to have been within those contemplated by the pilotage clause, and a defense of those actions gives rise to a claim for indemnification. *See Peter Fabrics, Inc. v. S.S. HERMES, supra,* 765 F.2d at 317 (third-party complaint dismissed as against indemnitee and attorneys' fees recovered from indemnitor); *O'Gee v. Dobbs Houses, Inc.,* 570 F.2d 1084, 1090 (2d Cir.1978) (third-party defend-

ant found not liable and awarded costs of defending cross-claim brought by indemnitor). Indemnification need not take the form of reimbursement. It is not required in order to obtain indemnification for attorneys' fees that the indemnitee first have paid them, but rather the indemnitor may be required to pay them directly to the attorney. *See Peter Fabrics, Inc. v. S.S. HERMES, supra,* 765 F.2d at 317 ("it is left to the court to determine the reasonable fee that the client would have paid").

Thus McAllister's cross-claim for attorneys' fees and costs was not rendered moot by the dismissal of the third-party complaint, but rather should be granted. Consequently, the court will amend the judgment upon receipt of evidence of McAllister's attorneys' fees.

IT IS SO ORDERED.