**C.T. SHIPPING, LTD., Petitioner,**

v.

**DMI (U.S.A.) LTD., Respondent.**

**DMI (U.S.A.) LTD., Petitioner,**

v.

**C.T. SHIPPING, LTD., Respondent.**

Nos. 91 Civ. 2748 (RLC), 91 Civ. 2811 (RLC).

United States District Court, S.D. New York.

Sept. 6, 1991.

Poles, Tublin, Patestides & Stratakis, New York City, for C.T. Shipping, Ltd.; John G. Poles, Edward M. Cuddy, III, of counsel.

Camhy Karlinsky & Stein, New York City, for DMI (U.S.A.), Ltd.; Robert P. Stein, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

### FACTUAL BACKGROUND

This case is before the court on the petition of C.T. Shipping, Ltd. ("C.T.") to vacate an arbitration award, and the petition of DMI (U.S.A.) Ltd. ("DMI") to confirm

the same award. The facts of this case, as summarized below, are set out in greater detail in the arbitration panel's final award. *DMI (U.S.A.) Ltd. v. C.T. Shipping, Ltd.,* S.M.A. No. 2756 (Apr. 19, 1991) [hereinafter "Final Award"] (Berg, Nichols, Arbs., Laing, Chmn.) (available on LEXIS, ADMRTY library, USAWDS file).

The dispute arises under a New York Produce Exchange time charter party, dated January 27, 1988, between C.T. as owner of the M/V China Trident and DMI as charterer. *See* Amended Verified Petition to Vacate, exhibit 1 (Time Charter) [hereinafter "C/P"]. The China Trident was also the subject of a subcharter between DMI as disponent owner and Anglo–Canadian Shipping Company ("Anglo–Canadian") as charterer. Before the vessel was to receive its intended cargo of lumber at Prince Rupert, British Columbia, the Canadian Coast Guard prohibited the further use of the vessel in Canada until the cargo gear was repaired and recertified. Anglo–Canadian thereupon refused to accept the vessel. The gear was not repaired in time to satisfy the subcharter laycan. Anglo–Canadian then cancelled the subcharter, and commenced arbitration against DMI at London, England (the "London arbitration"). In the London arbitration, DMI was found liable to Anglo–Canadian for roughly $160,000 in damages.

DMI then commenced the arbitration at issue in this case (the "New York arbitration") under the head charter, contending that C.T. failed to provide the vessel with "machinery and equipment in a thoroughly efficient state" and "in every way fitted for ordinary cargo service," as required by the charter. *See* C/P, lines 6, 22. Pursuant to a provision in the charter, *id.* ¶ 17, lines 107–09, the dispute was heard before a panel of three arbitrators: Jack Berg, appointed by DMI; Alexis Nichols, appointed by C.T.; and Donald Laing, Jr., the chairman, appointed by the other two arbitrators. To secure execution of any eventual judgment on the arbitration award, DMI successfully commenced attachment proceedings against C.T. in the United States District Courts for the Eastern and Northern Districts of California.

After hearing evidence, the panel majority, over Arbitrator Nichols' dissent, found on April 19, 1991, that C.T. had breached the charter. The panel awarded DMI a total of $481,490.83, consisting of lost profits, indemnity for the liability imposed in the London arbitration, interest on the foregoing items, costs and legal fees of the London arbitration, costs and legal fees of the attachment proceeding, and costs of the New York arbitration. Final Award 21. The award also stated that interest would continue to run at specified rates (ranging from zero to 15% per annum for various parts of the award) if the award was not paid within thirty days. *Id.* at 24. The arbitrators' fee, which was "deemed to be a part of [the] award," *id.,* was fixed at $41,850.00, to be paid equally by the parties to the arbitrators in the first instance. *Id.* app. B.

Subsequently, C.T. filed a petition in this court, No. 91 Civ. 2748 (RLC), to vacate the award on various grounds pursuant to 9 U.S.C. § 10 and N.Y. CPLR 7511. DMI filed a petition, No. 91 Civ. 2811 (RLC), to confirm the award pursuant to 9 U.S.C. § 9. By order of the court, the actions were consolidated. Because of the maritime subject matter of the case, the court has jurisdiction over the petitions under 28 U.S.C. § 1333.

## DISCUSSION

### I. *Choice of Law*

C.T. bases its petition to vacate both on a federal statute, 9 U.S.C. § 10, and on a New York statute, CPLR 7511. In addition, much of C.T.'s argument relies on New York cases.

■ However, in enacting the Federal Arbitration Act, 9 U.S.C. § 1, Congress established a national policy favoring arbitration pertaining to maritime transactions and to interstate and foreign commerce. *Southland Corp. v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984). It is therefore clear that the federal statute, when it is applicable, preempts state statutes purporting to create alternative

grounds for confirming or vacating arbitration awards. *See id.* at 10–16, 104 S.Ct. at 858–861; *I/S Stavborg v. National Metal Converters, Inc.*, 500 F.2d 424, 429–30 (2d Cir.1974). Accordingly, CPLR 7511 is inapplicable to this case.

■ Moreover, a federal court exercising its admiralty jurisdiction will apply federal maritime law, and not state law. *See, e.g., Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 227, 106 S.Ct. 2485, 2496, 91 L.Ed.2d 174 (1986); *Herlofson Management A/S v. Ministry of Supply, Kingdom of Jordan*, 765 F.Supp. 78, 85 n. 7 (S.D.N.Y.1991) (Carter, J.). All issues in this case, therefore, are governed not by New York state law but by federal maritime law.

II. *Alleged Grounds for Vacating the Arbitration Award*

A. Refusal to Postpone Hearing or to Hear Evidence

C.T. challenges the arbitrators' decision on the grounds that the arbitrators refused to grant an adjournment of the hearing to allow C.T. to call as a witness a surveyor for Bureau Veritas in Singapore (the "B.V. surveyor") who had certified the China Trident's cargo gear before that vessel proceeded to Canada. The court is authorized to vacate an arbitration award "[w]here the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3).

■ Contrary to C.T.'s interpretation, § 10(a)(3) does *not* "expressly provide[ ] that arbitrators who ... refuse an adjournment [are] guilty of misconduct." Poles Affirmation ¶ 17. Rather, the granting or denying of an adjournment falls within the broad discretion of the arbitrators. *Storey v. Searle Blatt Ltd.*, 685 F.Supp. 80, 82 (S.D.N.Y.1988) (Sweet, J.); *see also Fairchild & Co. v. Richmond F. & P.R.R.*, 516 F.Supp. 1305, 1313 (D.D.C.1981); *Dan River, Inc. v. Cal–Togs, Inc.*, 451 F.Supp. 497,

503–04 (S.D.N.Y.1978) (Duffy, J.). Section 10(a)(3) *limits* the court's review of the arbitrator's refusal to adjourn the hearing to a determination of whether the arbitrators were guilty of misconduct. *Storey, supra,* 685 F.Supp. at 82. The court will not interfere with an award on these grounds as long as there exists a reasonable basis for the arbitrators' refusal to grant a postponement. *Id.; see also Fairchild, supra,* 516 F.Supp. at 1313–1314.

By C.T.'s own admission, C.T.'s counsel did not advise the arbitration panel of its intention to call the B.V. surveyor until the conclusion of the fourth evidentiary hearing on May 14, 1990, which was over a month after the arbitrators were sworn in, and nearly nine months after DMI had demanded arbitration. *See* Poles Affirmation ¶¶ 10, 12. On May 30, 1990, C.T.'s counsel informed the panel chairman that the B.V. surveyor was not immediately available to testify, and requested an unspecified amount of additional time. *Id.* ¶ 13. On June 8, 1990, the panel majority (over Nichols' dissent) agreed to hold an additional evidentiary hearing on July 10 and 11, 1990—nearly two months from C.T.'s initial announcement of its intent to call the witness—with the understanding that all remaining witnesses would be presented at that hearing. *Id.* exhibit 11. C.T. produced one additional witness at that hearing, but did not produce the B.V. surveyor.

■ On this basis, it is clear that C.T. has not satisfied its burden of proving that the arbitrators were guilty of misconduct in refusing to postpone the hearing further. The arbitrators could reasonably have concluded that C.T. was attempting to delay the hearings unnecessarily. They were under no obligation to grant C.T. an indefinite postponement to allow it to call a particular witness. The purpose of arbitration is to provide a speedy and inexpensive determination, without the extended delays inherent in a court proceeding. The fact that the panel subsequently took over six months to render its decision is not sufficient on these facts to establish that the panel's refusal to grant an adjournment was unreasonable.

Moreover, C.T. has not indicated to this court when, if ever, it would have been able to produce the B.V. surveyor as a witness. Consequently, C.T. cannot say that its rights were prejudiced by the panel's refusal to grant the requested delay. The court therefore cannot vacate the award on this basis.

### B. Accrual of Indemnity Claim

C.T. also contends that the panel majority was guilty of "manifest disregard of the law" in finding that DMI's claim for indemnity for the London arbitration accrued when liability was imposed by the London arbitrators, even though DMI had not yet paid that claim at the time of the New York arbitration.

Courts have no power to review the merits of an arbitration award; rather, the arbitrators' findings of fact and conclusions of law, even if erroneous, are final and binding. *See, e.g., United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). For an arbitration award to be set aside on the narrow ground of "manifest disregard of the law," *see Wilko v. Swan*, 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953), the arbitrators must have "appreciate[d] the existence of a clearly governing legal principle but decide[d] to ignore or pay no attention to it." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir.1986). To support such a finding, the arbitrators' error "must have been obvious and readily and instantly perceived by the average person qualified to serve as an arbitrator." *Id.* That is, the governing law ignored by the arbitrators must be "well defined, explicit, and clearly applicable." *Id.* at 934.

 The panel majority correctly concluded that an indemnity claim in a maritime case accrues as soon as liability is imposed. C.T. cites a number of New York cases in support of the proposition that an indemnity claim accrues only when pay-

ment is made on the underlying claim or judgment, and this may well be an accurate statement of New York state law. However, in federal admiralty practice, as distinct from ordinary civil practice, it has long been the rule that a plaintiff may collect directly from the defendant's indemnitor who is made a third-party defendant, without first collecting from the defendant. Rule 14(c), F.R.Civ.P. In view of the policy expressed in this long-standing rule, *see The G.L. 40*, 66 F.2d 764, 766 (2d Cir.1933), it would be senseless to hold that a claim for which indemnity is sought must be paid before a separate action for indemnity may be instituted.

Accordingly, it has been held that a maritime claim for indemnity accrues as soon as the indemnitee's liability is determined. *Ryan Stevedoring Co. v. United States*, 175 F.2d 490, 494 (2d Cir.1949); *Hidick v. Orion Shipping & Trading Co.*, 157 F.Supp. 477, 486 (S.D.N.Y.1957) (Herlands, J.); *Dell v. American Export Lines, Inc.*, 142 F.Supp. 511, 514 n. 1 (S.D.N.Y.1956) (Dimock, J.); *Hidalgo Steel Co. v. Moore & McCormack Co.*, 298 F. 331, 334 (S.D.N.Y.1923) (Goddard, J.);[1] *see United States v. GTS Adm. Wm. Callaghan*, 643 F.Supp. 1483, 1485 (S.D.N.Y.1986) (Sweet, J.). Moreover, it has been held that a claim for indemnity for attorneys' fees may be brought when liability on the underlying claim is imposed, without waiting until the fees are paid. *Id.; see also Peter Fabrics, Inc. v. S.S. Hermes*, 765 F.2d 306, 317 (2d Cir.1985) ("it is left to the court to determine the reasonable [attorneys'] fees that the client *would have paid*") (emphasis added).

Even if C.T. were correct in stating that it had "thoroughly distinguished" the cases cited by DMI in the arbitration proceeding, this contention would at best support a conclusion that the arbitrators had made an error of law, not that they had deliberately disregarded well-established law. This court has no power to review an arbitration award for ordinary errors of law or fact. C.T.'s argument that the award must be vacated on this basis is frivolous.

---

1. Although these cases, for the most part, addressed the issue in the context of the statute of limitations, the same principle clearly applies to

the present situation, since there is no sense in running the statute of limitations before the claim may be brought.

## C. Award of Attorneys' Fees

As recognized by the arbitrators, *see* Final Award 20, ¶ 4, and by both parties in this case, arbitrators lack the authority to award counsel fees in the absence of an express power granted to the panel. *Sammi Line Co. v. Altamar Navegacion, S.A.*, 605 F.Supp. 72 (S.D.N.Y.1985) (Sand, J.) (cited by the arbitrators); *Transvenezualian [sic] Shipping Co. v. Czarnikow–Rionda Co.*, 1982 A.M.C. 1458 (S.D.N.Y.1981) (Carter, J.); *cf. Federal Commerce & Navigation Co. v. Associated Metals & Minerals Corp.*, 1979 A.M.C. 1733 (S.D.N.Y.1978) (Weinfeld, J.) (arbitrators may not award fees incurred in litigation to compel arbitration). *But see Todd Shipyards Corp. v. Cunard Line, Ltd.*, 943 F.2d 1056, 1064 (9th Cir.1991) (maritime arbitrators may award attorneys' fees when the losing party litigated in bad faith). The charter party in this case includes the standard New York Produce Exchange arbitration clause (with the modification that the arbitrators must be "shipping men"), C/P ¶ 17, lines 107–09, which was held not to authorize an award of attorneys' fees in *Sammi* and *Transvenezualian.*

The court is asked to resolve three issues: (1) whether the arbitrators were authorized, in accordance with DMI's right to indemnity, to award attorneys' fees incurred by DMI in connection with the London arbitration brought by Anglo–Canadian, (2) whether the arbitrators were authorized to award attorneys' fees incurred by DMI in the attachment proceedings, and (3) whether, as C.T. contends, the arbitrators awarded attorneys' fees *sub rosa* in connection with the New York arbitration.

### 1. *Attorneys' Fees of the London Arbitration*

There is no merit to C.T.'s contention that the arbitrators exceeded their authority in granting fees to DMI in connection with the London arbitration. "An indemnitee may recover from [its] indemnitor attorneys' fees and expenses incurred in defending a claim as to which [it] is indemnified," although the indemnitee ordinarily "may not recover fees and expenses incurred to establish [its] right against the indemnitor." *Peter Fabrics, supra,* 765 F.2d at 315–16; *see also GTS Adm. Wm. Callaghan, supra,* 643 F.Supp. at 1484–85. Because the New York arbitrators' award to DMI in connection with the London arbitration was pursuant to a contractual right of indemnity, *see* Final Award 19, ¶ 1, they properly awarded DMI its attorneys' fees reasonably incurred in connection with the defense of the London arbitration.

### 2. *Attorneys' Fees of the Attachment Proceedings*

The question of the arbitrators' authority to award attorneys' fees in connection with the pre-arbitration attachment proceedings in the federal courts appears to be a matter of first impression.[2] C.T. argues, quite plausibly, that an attachment proceeding in aid of arbitration is related to the arbitration in much the same way as a petition to compel arbitration is related to the arbitration. Under *Federal Commerce, supra,* 1979 A.M.C. 1733, arbitrators do not have the authority to award attorneys' fees in connection with a petition to compel arbitration. Because the fees incurred in con-

---

**2.** To be sure, the court is aware of one case in this court confirming a maritime arbitration panel's award of attorneys' fees incurred in attachment proceedings, *Amoco Overseas Oil Co. v. Astir Navigation Co.,* 490 F.Supp. 32 (S.D.N.Y.1979) (Conner, J.), *confirming Astir Navigation Co. v. Amoco Transport Co.,* S.M.A. No. 1360 (Sept. 14, 1979) (Malcolmson, Nelson, Arbs., Berg, Chmn.), and several other reported New York arbitration decisions awarding such fees. *Ferromet Resources, Inc. v. DMI (U.S.A.) Ltd.,* S.M.A. No. 2725 (Nov. 16, 1990) (Nelson, Siebel, Arbs., Siciliano, Chmn.); *Grecomar Shipping Agency Ltd. v. Granite Stone Supply Co.,* S.M.A. No. 2684 (July 24, 1990) (Love, Wills, Arbs., Sembler, Chmn.); *Glacier Marine Agencies, Ltd. v. Metal Transport Corp.,* S.M.A. No. 2266 (July 3, 1986) (Tyd, Van Gelder, Arbs., Stapleton, Chmn.); *Big Lift Shipping (N.A.) v. Street Maritime Co.,* S.M.A. No. 1352 (Aug. 7, 1979) (Zubrod, Chmn., Berg, Cederholm, Arbs.); *Mini Carriers Systems, Inc. v. Naviera Amazonica Peruana, S.A.,* S.M.A. No. 1077 (Nov. 15, 1976) (Cederholm, Measter, Arbs., Klosty, Chmn.); *cf. Maritime Int'l Nominees Establishment v. Republic of Guinea,* S.M.A. No. 2451, Case No. ARB/84/4 (Dec. 30, 1987) (Zubrod, Pres., Berg, Sharpe, Members) (at Washington, D.C.) (awarding attorneys' fees incurred because of wrongful attachment). However, it appears that the arbitrators' authority to award such fees was not contested in any of these cases.

nection with an attachment proceeding are fees incurred to establish the same claim as the underlying litigation, they should not be accorded any different treatment from the fees incurred in litigating the merits of the underlying claim.

However, because the arbitrated claim is, to a substantial extent, a claim for indemnity, this case is controlled not by *Federal Commerce*, but by *Marcy Lee Manufacturing Co. v. Cortley Fabrics Co.*, 354 F.2d 42 (2d Cir.1965). Normally, attorneys' fees may not be recovered in a civil action to enforce an indemnity claim, *Peter Fabrics, supra*, 765 F.2d at 315–16, even though " 'the very nature of indemnity ... is to make the party whole.' " *Id.* at 316 (quoting *E.C. Ernst, Inc. v. Manhattan Constr. Co.*, 551 F.2d 1026, 1037 (5th Cir.), *on reh'g in part*, 559 F.2d 268 (5th Cir. 1977), *cert. denied*, 434 U.S. 1067, 98 S.Ct. 1246, 55 L.Ed.2d 769 (1978)). In *Marcy*, however, the Second Circuit held that commercial arbitrators[3] do not exceed their authority, within the meaning of 9 U.S.C. § 10, if they fail to "respect the rule disallowing legal expenses incurred in enforcing indemnity claims" by awarding attorneys' fees incurred in connection with a petition to compel arbitration. *Marcy, supra*, 354 F.2d at 43. Indeed, the court noted that "avoidance of that rule, which necessarily leads to undercompensation, might be one of the very reasons for an agreement to substitute the arbitral for the legal process." *Id.*

■ This rationale applies to legal fees incurred as a result of a party's resistance to attachment in aid of an indemnity claim, no less than to legal fees incurred as a result of a party's refusal to submit an indemnity claim to arbitration voluntarily. Accordingly, the court finds that the arbitrators did not exceed their authority in awarding attorneys' fees related to the prearbitration attachment proceeding.

**3.** Although *Marcy* was not a maritime case, the court sees no reason to follow a different rule

### 3. *Attorneys' Fees of the New York Arbitration*

■ C.T. argues that the arbitrators secretly included in their award an amount for attorney's fees incurred in the arbitration proceeding itself, and deliberately attempted to disguise it under the supposedly "ambiguous" term "costs of this arbitration." It bases this contention on a single statement in the dissenting opinion of Arbitrator Nichols, in which he stated that the majority had granted "legal fees ... in connection with the London arbitration in the amount of $57,667.35, plus legal fees of this arbitration in the amount of $55,-000.00." Final Award app. A (dissenting opinion of Arbitrator Nichols) at 11. Thus, C.T. contends, the majority's "attempted dissembling" is exposed. Reply Memorandum 9.

This argument is completely frivolous. The supposedly "ambiguous" and "dissembling" portion of the majority opinion reads as follows:

We further grant DMI a sum towards costs it incurred in the arbitration proceeding. CT has correctly argued that arbitrators lack the power to award counsel fees in the absence of an express power granted to the panel or by a stipulation of counsel. See *Sammi Line Co. v. Altamar Navegacion, S.A.*, 605 F.Supp. 72 (S.D.N.Y.1985). However, we should emphasize that the lack of power to assess counsel fees relates solely to counsel fees incurred in this arbitration and not to fees associated with the London arbitration or the attachment proceedings. A summary of damages awarded DMI is as follows:

. . . .

6. DMI's costs and legal fees in the London arbitration . . . . . . . . . . . . . [$] 57,667.25
7. Allowance towards DMI's legal fees and costs in the attachment proceeding and costs of this arbitration . . . . 55,000.00

here, since 9 U.S.C. § 10 applies equally to maritime and non-maritime cases.

Final Award 20–21. Contrary to C.T.'s contention, there is nothing ambiguous in the panel's ruling. As any reasonable reader would recognize, the panel explicitly held that it had no authority to award attorney's fees incurred in the New York arbitration itself, and thus awarded only "costs" in that regard, as distinct from "costs and legal fees" in regard to the London arbitration and the attachment proceeding.

Moreover, the court sees no reason to take the panel's opinion at anything other than face value. C.T.'s hyperliteral reading of Arbitrator Nichols' dissent is patently unreasonable. The reference in that dissent to "legal fees of this arbitration," viewed in its context and the context of the majority opinion, evidently refers to the legal fees awarded in connection with the attachment proceedings related to the arbitration. Although Arbitrator Nichols only mentions "legal fees" and not "costs" in connection with the New York arbitration, he does the same in connection with the London arbitration; in both instances, it is plainly a minor inaccuracy on his part. If the dissenting arbitrator really believed that the majority was dissembling in its opinion, surely he would not have relied on a brief, inconspicuous, passing comment to call the situation to the attention of the parties and the court. The panel majority's "dissembling" is nothing more than a figment of the overzealous imagination of C.T.'s attorneys.

### D. Security for Arbitrators' Fees

■ C.T. also contends that the arbitrators were guilty of "misconduct" or "partiality" in demanding that the parties post security for the arbitrators' fees in escrow prior to the issuance of the award.[4] C.T. objected to the arbitrators' demand, but

ultimately paid the requested amount into escrow under protest.

C.T. relies on *Sun Refining & Marketing Co. v. Statheros Shipping Corp.*, 761 F.Supp. 293 (S.D.N.Y.1991) (Mukasey, J.), which vacated an arbitration award on the grounds of "evident partiality" based on the allocation of the arbitrators' fees.[5] In that case, the two arbitrators in the majority had increased their own fees without notifying the dissenting arbitrator, who had been appointed by the losing party, and without increasing his fees. *Id.* at 301. Moreover, there was additional evidence of partiality and conflict of interest on the part of the panel chairman. *See id.* at 302–04.

The circumstances of the present case are not even remotely similar to those of *Sun Refining.* The fees in this case were allocated equally among the three arbitrators, *see* Final Award app. B, and C.T. does not allege that the panel majority excluded the dissenting arbitrator from participating in any of their decisions. Thus, there is no trace of "petty vindictiveness" against the dissenting arbitrator. *Sun Refining, supra,* 761 F.Supp. at 301. There is no evidence whatsoever of bias. All that C.T. has to complain about is the fee-security demand.

Regardless of which party has the burden of production and proof, and regardless of whether this issue is to be determined by a summary judgment standard or by a preponderance of the evidence standard, DMI has established that the challenged practice is proper. DMI has presented credible and sufficient affidavits from three experienced and respected maritime arbitrators,[6] testifying that withhold-

---

**4.** C.T. also maintains that the arbitrators attempted to deprive the parties of their right to challenge the amount of the arbitrators' fees by demanding that the parties stipulate "that the arbitrators' fees designated in the final award will be paid within 30 days of the award's distribution." Amended Verified Petition to Vacate ¶ 19 & exhibit 2. The court, however, does not read this request as a demand for a waiver of the right to challenge the fees, but merely as a demand for an agreement that the fees should

be paid at a particular time. The court does not see any reason to vacate the award on this basis.

**5.** The court also noted that this was evidence of "misbehavior." 761 F.Supp. at 302.

**6.** Manfred W. Arnold, the President of the Society of Maritime Arbitrators ("S.M.A."); Donald E. Zubrod, a past President of the S.M.A.; and Leo G. Kailas, a member of the S.M.A. and a former Chairman of the Admiralty Committee of the Association of the Bar of the City of New York.

ing awards as security for fees is an accepted practice among maritime arbitrators. *See, e.g., Compagnie des Bauxites de Guinée v. L'Union Atlantique S.A. d'Assurances,* 723 F.2d 357, 363 (3d Cir. 1983) (contract to be construed by reference to industry custom). C.T. has presented no contrary evidence whatsoever, but has merely pointed out that the affiants, as arbitrators, have an economic interest in continuing that practice. It appears to the court that the practice is quite sensible and justified. Contrary to C.T.'s suggestion, there is no reason to believe that the arbitrators' decision was in any way affected by C.T.'s protest of their fee arrangement. The court finds that the arbitrators' demand for security for their fees as a condition for releasing their award affords no basis for vacating the award.

### E. Evident Partiality

■ According to C.T., the arbitrators' conduct in denying C.T. an adjournment, exceeding their power, and manifestly disregarding the law, also establishes that they are partial to DMI. The party seeking to vacate an award on the ground of "evident partiality" must show that "a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Morelite Constr. Corp. v. New York City Dist. Council Carpenters Ben. Funds,* 748 F.2d 79, 84 (2d Cir. 1984). As the court's discussion above makes clear, the arbitrators did not manifestly disregard the law or exceed their authority, and their conduct in denying an adjournment was not improper. Their decision to award attorneys' fees in connection with the attachment was evidently due to a good-faith misunderstanding of the scope of their authority. C.T. has failed to make a showing of evident partiality.

### F. Amount of the Arbitrators' Fees

C.T. also claims that the amount of the arbitrators' fees was "exorbitant." Even if this were true, it would not cast doubt on the arbitrators' impartiality as between C.T. and DMI, because the arbitrators allo-cated the fees equally between the parties. *See* Final Award app. B.

More generally, the court will not reach the question of whether the arbitrators' fee was reasonable or unreasonable, because three very necessary and interested parties—namely, the arbitrators—have not been joined in this litigation. Although the arbitrators stated that their fees were made part of the award, *see* Final Award 24, the dispute as to the fees is fundamentally between C.T. and the arbitrators, not between C.T. and DMI. Indeed, it would be in DMI's interest to decrease the arbitrators' fees, not to uphold them. Therefore, DMI lacks standing to assert the arbitrators' claim that their fees are reasonable.

Of course, because the arbitrators allocated their fees equally between C.T. and DMI but declared both parties jointly and severally liable for the entire amount, DMI could have a potential claim for contribution against C.T. However, such a claim would never accrue if the arbitrators, for example, collected the entire fee from C.T. Thus, any contribution claim is not ripe for adjudication.

### III. *Rule 11 Sanctions*

#### A. Liability for Sanctions

DMI has moved for an imposition of sanctions against C.T. and the attorney who signed its papers pursuant to Rule 11, F.R.Civ.P. Rule 11 requires the court to impose sanctions against an attorney, the attorney's client, or both, when it appears that a pleading, motion or other paper signed by the attorney has been interposed for any improper purpose, or when, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading, motion or other paper is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law. *See* Rule 11, F.R.Civ.P.; *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); *Healey v. Chelsea Resources, Ltd.,* 132 F.R.D. 346, 352 (S.D.N.Y.1990) (Carter, J.).

Some, but not all, of C.T.'s arguments in its memoranda of law are frivolous. *See Eastway Constr. Corp. v. City of New York*, 637 F.Supp. 558, 570 (E.D.N.Y.1986) (stating that filings must be divided into their constituent parts), *modified*, 821 F.2d 121 (2d Cir.), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). Although the court has rejected C.T.'s arguments regarding the arbitrators' award of fees in connection with the attachment proceedings and the arbitrators' refusal to postpone the final hearing, the court is not persuaded that those arguments had "no chance of success," *International Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 390 (2d Cir.1989), *cert. denied*, 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558, such that "after reasonable inquiry, a competent attorney could not form a reasonable belief that [it] is well grounded." *Eastway, supra*, 762 F.2d at 254. The court is also unprepared to conclude, at this stage of the litigation, that C.T.'s challenge to the reasonableness of the arbitrators' fees was without adequate basis.

However, it is clear that C.T.'s fanciful and scandalous attack on the honesty of two of the arbitrators in regard to the award of attorneys' fees is completely frivolous and has no reasonable factual basis whatsoever.

C.T.'s argument challenging the award of attorney's fees for the London arbitration also violates Rule 11. Under clearly controlling Second Circuit precedent, a right to indemnity includes a right to recover attorneys' fees incurred in establishing the indemnified claim. On reasonable inquiry, any competent attorney would have realized that C.T. had no chance under existing law of succeeding on its claim that the arbitrators had manifestly disregarded the law in that respect, and C.T. has not advanced any argument to extend, modify or reverse the law as it stands. *See International Shipping, supra*, 875 F.2d at 390; *Healey, supra*, 132 F.R.D. at 352.

Similarly, C.T.'s argument regarding accrual of the indemnity claim is a Rule 11 violation. Even if C.T.'s statement of the law of indemnity were correct—and it is not—C.T.'s argument here would still be a futile attempt to subject the arbitrators' judgment to review in this court for an error of law. There is absolutely no reasonable basis for its argument that the arbitrators manifestly disregarded the law.

Rule 11 sanctions are also appropriate for C.T.'s argument regarding the propriety of the arbitrators' withholding their decision as security for their fees. It is clear, from C.T.'s memoranda of law, that C.T.'s attorneys either made the argument in bad faith or failed to undertake a reasonable investigation to determine the status of the arbitrators' procedure. If such an investigation had found that there was a basis for C.T.'s argument, then C.T. would have had something other than bare denials with which to contradict the affidavits of DMI's experts. Thus, it is apparent that C.T.'s argument regarding the irregularity of the arrangement has no reasonable factual basis, and is subject to Rule 11 sanctions.

**B. Nature and Amount of Sanctions**

The court has discretion in fashioning an appropriate penalty for a Rule 11 violation, but the usual basis of a Rule 11 sanction is the payment of the other side's reasonable attorneys' fees incurred as a result of the improper filing. *See Eastway Constr. Corp. v. City of New York*, 821 F.2d 121 (2d Cir.1987). However, in this case, it would be difficult or impossible to separate those fees incurred as a result of the frivolous arguments from those incurred as a result of the reasonable arguments, since they are intertwined in the same document, namely C.T.'s memorandum of law in support of its petition to vacate the Final Award.[7] The court does not believe that DMI will be able to establish to any degree of certainty that it incurred additional expenses because of C.T.'s frivolous argu-

---

7. The court concludes that DMI incurred no reasonable attorneys' fees and expenses as a result of C.T.'s improper arguments in its reply memorandum, as distinguished from its origi-

nal memorandum of law. To be sure, DMI's counsel responded to C.T.'s reply memorandum in a letter to the court. The court, however, does not wish to encourage the unreasonable

ments, as distinct from the non-frivolous arguments contained in the same document. Under the circumstances, the court sees no point in creating "time-consuming and expensive satellite litigation" on the issue of fees. *Eastway, supra,* 637 F.Supp. at 564.

 Therefore, the court will not assess attorneys' fees against C.T. Although some sanction is mandatory for every Rule 11 violation, *O'Malley v. New York City Transit Auth.,* 896 F.2d 704, 709 (2d Cir. 1990), a reprimand of the attorney who signed the document will sometimes suffice. *See Figueroa–Ruiz v. Alegria,* 905 F.2d 545, 549 (1st Cir.1990); *Thomas v. Capital Sec. Servs., Inc.,* 836 F.2d 866, 878 (5th Cir.1988); *Frantz v. U.S. Powerlifting Fed'n,* 836 F.2d 1063 (7th Cir.1987); 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1336 at 117 (2d ed. 1990). The court finds such a reprimand to be a sufficient and appropriate sanction in this case.

## CONCLUSION

Because there is no valid ground for vacating the arbitrators' decisions, the Final Award is confirmed, without prejudice to any claims between the parties and the arbitrators as to the amount of the arbitrators' fees. Edward M. Cuddy, III, the attorney who signed C.T.'s papers, is reprimanded for failure to comply with Rule 11, F.R.Civ.P. Judgment shall be entered forthwith for DMI and against C.T. in the amount of $491,366.04,[8] with post-judgment interest at the statutory rate, and DMI's costs of the action.

IT IS SO ORDERED.

---

and unnecessary practice—engaged in by counsel for both parties—of burdening the court with successive sur-reply memoranda in letter form, continuing long after the briefing deadline and the return date of the motion have passed. The court also wishes to caution counsel against raising arguments in a reply memorandum that are beyond the scope of the opposition memorandum.

**8.** This includes the arbitrators' original award of $481,490.83, plus interest of $9,875.21. This interest has been calculated, as specified by the arbitrators, from May 19, 1991 (30 days from the date of the award) to today (a total of 110 days) at the rate of 15% per annum on $71,-823.79 principal, 10% per annum on $219,-941.84 principal, and zero on the balance. *See* Final Award 21, 24.