**Ronald DeSILVA, Petitioner,**

**v.**

**FIRST UNION SECURITIES, INC., Respondent.**

**No. 02 CIV. 7542(WCC).**

United States District Court, S.D. New York.

Feb. 26, 2003.

Burchetta, Collins & Hanley, Carmel, NY (J. Peter Collins, of Counsel), for petitioner.

Davidson, Manchel & Brennan, LLP, Northvale, NJ (Joel E. Davidson, David L. Becker, Christina M. Parisi, of Counsel), Lewis and Roca LLP, Phoenix, AZ (Jesse B. Simpson, W. Todd Coleman, of Counsel), for Respondent.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Petitioner, Ronald DeSilva, brings this action pursuant to CPLR § 7511,

seeking vacatur of an arbitration award dismissing petitioner's claims in their entirety upon the ground that the arbitrators exceeded their authority by expanding the scope of the arbitration to include a claim that was not contained within the written submission Response.[1] Petitioner also seeks an order compelling respondent, First Union Securities, Inc. ("First Union"), to issue petitioner an amended IRS form 1099 in accordance with the sworn testimony of respondent's expert, Rodger Marting. Respondent has cross moved to confirm the arbitration award pursuant to CPLR § 7511(e) and 9 U.S.C. § 9. For the reasons discussed below, the petition to vacate the award is denied and respondent's cross motion to confirm the award is granted.

## BACKGROUND

Petitioner brought various claims against respondent with respect to respondent's handling of petitioner's brokerage account. (Collins Aff. ¶ 3.) All claims were submitted to arbitration pursuant to an agreement to arbitrate. Although petitioner's claims were premised on various grounds, the paramount claim was that respondent margined a non-marginable stock traded on the Toronto–Canadian Exchange. (*Id.*) In early 2000, petitioner was an existing client of Randy Bianchi, a registered representative employed by First Union. (Resp't Mot. to Confirm at 2.) Mr. Bianchi was the custodian of petitioner's Individual Retirement Account ("IRA") and regular trading accounts. On February 7, 2000, petitioner instructed Bianchi to purchase 5,000 shares of Net Resources stock on margin. At the time of the purchase, petitioner was advised by Mr. Bianchi that the stock could be purchased on margin. (Collins Aff. ¶ 3.) On March 2, 2000, at the request of petitioner, Mr. Bianchi ordered the purchase of an additional 15,000 shares of Net Resources on margin.

In order to meet a margin call issued by respondent on March 10, 2000, petitioner authorized the transfer of 4,700 shares of Net Resources stock from his IRA to his regular trading account. (*Id.*) Respondent informed petitioner that he could transfer the stock back into his IRA account within 60 days in order to avoid any tax consequences. According to respondent, petitioner failed to request such a transfer while petitioner maintains that respondent would not permit him to transfer the stock back and as a result he incurred a tax penalty of $75,000. (*Id.*)

Some time after petitioner's stock purchase, Net Resources acquired Tracer Technology. Net Resources thereafter changed its name to Bakbone Software, Inc. ("BSI"). (Resp't Mot. to Confirm at 4.) When BSI updated its database to re-

---

**1.** *See* 9 U.S.C. § 9. Section 10 of the Federal Arbitration Act ("FAA") authorizes "the United States court in and for the district wherein the [arbitration] award was made" to "make an order vacating the award" under certain circumstances. 9 U.S.C. § 10(a). However, the provisions of the FAA do not confer jurisdiction on the federal courts, rather, "[t]here must be an independent basis of jurisdiction before a district court may entertain petitions under the Act." *Harry Hoffman Printing, Inc. v. Graphic Communications, Int'l Union, Local 261,* 912 F.2d 608, 611 (2d Cir.1990). Petitioner claims that the arbitrators exceed-ed their powers and the arbitration award at issue was made by NASD Dispute Resolution, Inc. at 125 Broad Street, New York, N.Y. and thus within the Southern District of New York. Additionally, because the requisites of diversity jurisdiction—diversity of citizenship and jurisdictional amount—are present and are not challenged here, an independent jurisdictional basis exists. *American Centennial Ins. Co. v. Seguros La Republica,* No. 91 Civ. 1235, 1996 WL 304440, at *1 (S.D.N.Y. June 5, 1996). Therefore, this Court has jurisdiction to entertain the petition to vacate pursuant to the FAA.

flect the name change, BSI determined that the Net Resources stock was not marginable. (*Id.*) According to respondent, Mr. Bianchi was contacted to inform him of the change in the margin status. Mr. Bianchi immediately informed petitioner that BSI determined that the Net Resources stock was not marginable. (*Id.*) Petitioner argues that the stock had never been marginable, claiming that a second call by Mr. Bianchi advised petitioner that the Margin Department admitted to him that the stock had never been marginable. In his Statement of Claim to the arbitration panel, petitioner argued, among other things, that by recklessly permitting him to use margin to purchase a stock that was, in fact, clearly non-marginable, respondent disregarded and breached its fiduciary duty to petitioner to handle his accounts in a professional manner. (Pet'r Statement of Claim at 3.)

Arbitration proceedings were held before the National Association of Securities Dealers on June 4, 2002 through and including June 7, 2002. (Simpson Aff. ¶ 9.) On June 20, 2002 the arbitration panel dismissed petitioner's claims in their entirety. Petitioner's motion to vacate is premised on the claim that although respondent's Response conceded that the Net Resources stock was never marginable, respondent's counsel was nevertheless permitted to prove during the hearing that the stock was marginable. (Collins Aff. ¶ 3.) Petitioner argues that permitting respondent to exceed the scope of the written submissions constituted misconduct on the part of the arbitration panel warranting vacatur of the arbitrators' decision. (*Id.* ¶ 3.) Respondent submits that petitioner has failed to show that the arbitrators exceeded their authority and that the panel had numerous independent grounds upon which to base their ruling. (Resp't Mot. to Confirm at 12.)

Petitioner also requests this Court to direct respondent to issue an amended IRS form 1099 based on respondent's failure to transfer petitioner's shares back into his IRA account within 60 days of the initial journaling to avoid tax consequences. Since there are no tax consequences until expiration of the 60–day period following the journaling, petitioner requests that a corrected 1099 be issued, reflecting a distribution from his IRA account in the amount of $48,305. (Letter from Collins to Sauer of 7/17/02 at 1.)

## DISCUSSION

### I. *Legal Standard*

"Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir.1997). The FAA lists the specific instances where an award may be vacated. *See* 9 U.S.C. § 10(a). Of relevance to this action are the provisions permitting vacatur when "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the … matter submitted was not made," or where the arbitrators were guilty of "misconduct in … refusing to hear evidence pertinent and material to the controversy." *Id.* Where arbitrators are accused of exceeding their powers, a court must ask "whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 824 (2d Cir.1997). Arbitrators' determinations regarding admission of evidence are not open to review "except where fundamental fairness is violated." *Polin v. Kellwood Co.*, 103 F.Supp.2d 238,

261 (S.D.N.Y.2000). Arbitrators are only required to hear proffered evidence that is "pertinent and material," and their determination of what is "pertinent and material" will only be deemed erroneous if it "deprives a party of a fundamentally fair arbitration process." *Id.*

## II. *Arbitrators' Authority*

■ Petitioner contends that respondent was improperly permitted to prove that Net Resources stock was always marginable despite the concession in respondent's answer that the stock was never marginable. Specifically, petitioner draws our attention to respondent's opening argument where a new claim that the stock was marginable was made as well as respondent's further pursuit of this new claim during the testimony of Pat Rile, former Branch Officer Manager of First Union. (Collins Aff. ¶ 6.) The issue before this Court therefore is whether fundamental fairness was violated where the arbitrators permitted respondent to prove that the Net Resources stock was marginable.[2] *See Polin,* 103 F.Supp.2d at 261; *see also Transit Casualty Co. v. Trenwick Reinsurance Co., Ltd.,* 659 F.Supp. 1346, 1354 (S.D.N.Y.1987) ("misconduct must amount to a denial of fundamental fairness of the arbitration proceeding in order to warrant vacating the award"). An examination of Mr. Rile's testimony reveals that there was no such violation. This was not a situation where petitioner's objections fell on deaf ears. Rather, petitioner's argument that respondent was pursuing a new claim was heard by the panel, discussed and ruled upon to the apparent satisfaction of petitioner's counsel. *See Chauffeurs, Etc. v. E.D. Clapp Corp.,* 551 F.Supp. 570, 577–78 (S.D.N.Y.1982) (holding that arbi-

trator violated 9 U.S.C. § 10(c) because his refusal to hear pertinent and material evidence violated principles of fundamental fairness and deprived the Union of a full opportunity to present its case). For example, after petitioner's counsel, Robert Heim, explained to the panel that respondent was changing its position at the hearing to say that Net Resources was, in fact marginable, the following dialogue between Mr. Heim and the arbitrators took place:

> Heim: I would like to explore that position as to what Mr. Rile's understanding is, the corporate representative of First Union is about that sudden change.
>
> Arbitrator: Well, I don't think there was any testimony in connection with the time that the stock was purchased, was there?
>
> Heim: That's true, Mr. Chairman; however, I don't believe I should be limited to the questions that were asked on direct because Mr. Rile is on our witness list as well and for purposes of time, I suppose we could do cross . . . .
>
> Arbitrator: Well, you could always call him as your own witness while you are here, I mean . . . .
>
> Heim: I think it would be more efficient to go through what Mr. Rile's knowledge is about this answer and what, exactly, First Union's position is as to whether or not Net Resources' stock was marginable.
>
> Arbitrator: All right. I will allow—you could call him as your own witness. The problem is the time. Now, I mean we've only got 20 minutes now and tomorrow. Why don't you . . . I'll allow your questioning now and . . . .

2. The Court need not determine whether respondent's answer conceded that Net Resources stock was ever marginable. Because the arbitration panel admitted evidence on this issue, our review is limited to whether fundamental fairness to petitioner was violated.

Heim: Okay.

(Simpson Aff., Ex. 4.)

Although Mr. Heim stated that he wished to explore respondent's "new" position, he did not, as is often the case, seek an adjournment or request additional time in order to address the alleged change.[3] It appears rather that Mr. Heim agreed with the arbitrators' suggestion that he continue with the cross examination of Mr. Rile on that day and, if he desired, proceed with direct examination on the following day. Simply put, Mr. Heim went ahead to litigate petitioner's claim. As a result, there was no violation of petitioner's right to fundamental fairness and the arbitrators acted within their authority in permitting respondent to pursue its claim that the Net Resources stock was marginable.

### III. *1099 Form*

 Petitioner maintains that in the tax period 2000 an IRS 1099 form was issued to him reflecting a distribution from petitioner's IRA totaling $141,000.[4] Petitioner argues that he always intended to transfer the shares back into his IRA within 60 days so as to avoid tax consequences but that respondent failed to honor petitioner's request and liquidated his account instead. (Letter from Collins to Sauer of 7/17/02 at 1.) Petitioner asks this Court to compel respondent to issue an amended IRS form 1099 to reflect a distribution from his IRA in the amount of $48,305, the diminished value of the shares on the 60th day following journaling. Petitioner submits that the import of Mr. Marting's testimony, respondent's expert, was that petitioner was and is entitled to an amended 1099. However, petitioner's argument comes too late. If petitioner is clearly entitled to such relief, petitioner should have asked the arbitration panel to permit him to amend his requested relief to include the issuance of an amended form 1099. *See Goldstein v. Visconti*, No. 00 Civ. 5729, 2001 WL 585633, at *2 (S.D.N.Y. May 30, 2001). Allowing such relief at this time would go beyond the scope of review contemplated by the FAA and would undermine the twin goals of arbitration. *See Willemijn Houdstermaatschappij*, 103 F.3d at 12.

### CONCLUSION

For the foregoing reasons, petitioner's motion to vacate the arbitration award and petitioner's request for an order to compel respondent to issue an amended IRS form 1099 are denied and respondent's cross motion to confirm and enforce the arbitration award is granted. The petition is hereby dismissed.

SO ORDERED.

---

**3.** We note that a request and denial for an adjournment would not have necessarily resulted in misconduct on the part of the arbitrators. *See Agarwal v. Agarwal*, 775 F.Supp. 588, 589–90 (E.D.N.Y.1991) (finding arbitrator's decision to deny postponement was reasonable and not misconduct); *C.T. Shipping, Ltd. v. DMI (U.S.A.) Ltd.*, 774 F.Supp. 146, 149 (S.D.N.Y.1991) (finding that a refusal to postpone the hearing did not constitute misconduct on the arbitrator's part); *Roche v. Local 32B–32J Serv. Employees Int'l Union*, 755 F.Supp. 622, 623 (S.D.N.Y.1991) (denial of repeated request for adjournment was not grounds for vacatur).

**4.** This distribution was presumably calculated by multiplying the number of shares by the share price on March 10, 2000, the date First Union journaled the shares from petitioner's IRA to his regular account. (Letter from Collins to Sauer of 7/17/02 at 1.)